## 30643.    GILES *v.* THE STATE.

DECIDED NOVEMBER 14, 1944.

737

*A. M. Kelley,* for plaintiff in error.

*D. M. Pollock, solicitor-general,* contra.

GARDNER, J. As we view the case, the admission of this testimony, over objection, under the record of this case, shows reversible error. (a) In the trial of a criminal case the defendant has the right to put his general good character in evidence. In doing so the law forbids him to go into specific acts to establish his good character by his own witnesses offered for that purpose. On cross-examination, however, the State may go into specific acts for the purpose of testing the knowledge of the defendant's witnesses as to his general good character.

(b) Where the good character of the defendant is put in issue, as in the instant case, the State in rebuttal may offer evidence as to his general bad character. In offering proof of the general bad character of the defendant the State is held to the same restrictions as to bad character as the defendant in offering his good character—that is, the State can not prove specific acts to show the defendant's bad character. Likewise, the defendant may cross-

examine these witnesses as to specific acts to test their knowledge of his bad character. In *Mimbs* v. *State,* 189 *Ga.* 189, 192 (5 S. E. 2d, 770), the court said: "Where the good character of a defendant is put in issue, evidence as to general bad character with respect to the particular trait may be shown in rebuttal; but in so doing it is not permissible to prove specific acts, except on cross-examination for the purpose of testing the knowledge of the defendant's witness, and except for the purpose of impeaching knowingly false statements made by the defendant himself to the jury or by his witnesses on cross-examination." In *Moulder* v. *State,* 9 *Ga. App.* 438 (71 S. E. 682), this court said: "Where character is put in issue, the direct examination must relate to general reputation, good or bad, as the case may be; but on cross-examination particular transactions, or statements of single individuals, may be brought into the inquiry, in testing the extent and foundation of the witness's knowledge and the correctness of his testimony on direct examination. . . The State can not put the general character of the defendant in a criminal case in issue; but the accused has the privilege of showing his good character as a relevant fact tending to make his guilt doubtful. Whenever the defendant puts his good character in issue as a fact, the State has the privilege of disproving this fact, either by cross-examination of the witness by whom the accused attempts to make the proof, or by the introduction of other witnesses who testify that his general character is bad, or by both methods. On the direct examination of such witnesses as are offered to establish character, particular transactions or the opinions or statements of individuals can not be brought in; but on cross-examination this privilege may be exercised, for the purpose of showing the extent and foundation of the witness's knowledge, or for the purpose of showing the incorrectness of his testimony on direct examination. This is the rule where impeachment of a witness on account of bad character is attempted (see Civil Code (1910), § 5882); and the same rule applies where the character of a party becomes otherwise relevant to the case. Say that the accused puts his character in issue. He, of course, produces the first witness. He will not be allowed on direct examination to ask the witness as to what he has heard particular persons say, but counsel in the examination, and the witness in his answers, will be confined to the general reputation of the accused—that is, his

character generally, or, if some particular trait, such as peaceableness or violence, is involved, generally as to that trait. But when State's counsel comes to the cross-examination, he may inquire of the witness as to whom he has heard speak of the accused, as to what these persons said, and then, for the purpose of showing the incorrectness of the witness's statement that this good character which he has ascribed to the accused is general, may inquire if he has not heard particular persons speak ill of him, or if he has not known him to be accused of particular crimes, or of particular acts which would tend to detract from a man's good character in the community. 'The shadings, as well as the brighter hues, are to be considered in making up the estimate of character and reputation.' Ingram *v.* State, 67 Ala. 67, quoted approvingly in *Ozburn* v. *State,* 87 *Ga.* 173, 181 (13 S. E. 247, 248). 'A man's character is made of a number of small circumstances, of which his being suspected of misconduct is one.' Reg. *v.* Wood, 5 Jurist, 225, cited approvingly in *Ozburn* v. *State,* supra. The defendant having rested, the State may introduce character witnesses in rebuttal. In that event the direct examination of State's counsel will be circumscribed, as was the direct examination of accused's counsel in the first instance; that is, he must ask the witness as to the general bad character of the accused, or as to his general bad character as to the particular trait involved. On cross-examination, counsel for the accused will be allowed the same latitude as the State's counsel in the first instance; that is, he may ask the witness as to the particular persons whom he has heard speak ill of the accused, and may also ask him as to the personal views expressed by particular persons, so far as he knows them."

(c) We know of no provision or decision concerning our law which would permit the State to offer specific acts to rebut the proof of general good character by offering proof by its own witnesses of specific acts of the defendant save where the accused has been convicted of a crime involving moral turpitude. In such event the record of such conviction must be introduced and not otherwise. But we doubt if this could be done over proper objection if such conviction was for an offense merely malum prohibitum. Crimes malum in se, such as larceny, perjury, and the like, even though specific transactions, tend to show such a moral degeneracy as would rebut proof of general good character, and for this reason

the State is permitted to offer the record of such convictions. The only way the law provides for the introduction of such convictions is by proper proof of the record of the convictions. The Supreme Court in *Pulliam* v. *Cantrell,* 77 *Ga.* 563, 565 (3 S. E. 280), where it had under consideration the impeachment of a witness (the procedure for rebutting the good character of the defendant and the impeachment of witnesses is the same), said: "It was an effort to show the conviction of Arthur of the offense of embezzlement by hearsay. Conviction can be shown only by the record." In the case last cited an effort was being made to show by hearsay that the witness involved had committed embezzlement. The evidence in the instant case, which was admitted over objections of the defendant, was the alleged violation of a purely regulatory measure not involving moral turpitude. The proof of specific acts of this nature was inadmissible to rebut the proof of the defendant's general good character which he had established by witnesses. Moreover, the specific transaction offered by the State in no wise showed motive or the bent of the defendant's mind concerning the crime for which he was on trial. We do not mean to hold that the violation of the criminal laws of the State (malum prohibitum) do not tend in a measure to affect and detract from the general good character of anyone, but we do mean to say that it is not permissible for the State to offer specific acts of such violations to rebut general good character. A general bad character brought about by the violations of such public statutes, or brought about by any other or many other off-side activities, must be proved in the general way provided by law. Only on cross-examination can such specific acts be gone into. And even if the general bad character might be established in the minds of the general public by the violations of offenses malum prohibitum, the specific convictions for such latter class of offenses is not admissible. We mention this because able counsel for the State urgently contends that the State in rebuttal of proof of general good character should be permitted to go into specific acts of the violation of criminal offenses, even though there has been no conviction, since there arises in many cases instances where a violation may be established but a conviction could not. Counsel says: "Defendant in error respectfully contends that as a matter of justice and right and as a means of establishing the truth in criminal trials the proof of specific acts

committed by the accused should be admissible in rebuttal to good-character evidence produced by the accused. It is contended that if a conviction is shown, there can be no question that it is admissible as in this case. However, there will be cases in which conviction can not be shown. It is in these cases that defendant in error insists that such evidence is also admissible." Happily, the law sanctions no such procedure.

It is contended by the State that the case should not be reversed because the evidence admitted over objection of the accused was concerning a trivial matter. This defendant, a negro, was being tried for murder, and to permit evidence that he was operating an automobile on the public highways while under the influence of intoxicating liquor on some previous occasion might have (and very likely it could have) prejudiced his case in the minds of the jury trying him.

Since the case is being reversed on this special ground we make no mention of the general grounds. The court committed error in overruling the motion for a new trial for the reasons herein set forth.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*