### 31683. KING v. THE STATE.

JORDAN, Justice.

Edward James King, also known as Pete King, was convicted of the murder of Billy Joe Jackson, and was sentenced to life imprisonment. He appeals his conviction and sentence.

The only question made is whether the trial judge erred, after charging on justifiable homicide in the language of Code Ann. § 26-902 (a) (Ga. L. 1968, pp. 1249, 1272), in charging paragraph (b) of this section. The language objected to is as follows: "A person is not justified in using force under the circumstances just enumerated if such person initially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant." It is urged that there was no evidence to authorize this charge.

Dorothy Reen Jackson, the woman with whom the deceased lived, testified that: On the day prior to the homicide there was a dispute between the appellant, his brother, and the deceased. The appellant came into the home of the witness and the deceased, stating, "I come in just like I said I would. I said I'd come in and I did. Since I'm in, I'll walk down in the kitchen and walk back out." The witness told the appellant, "I asked you just only one time to get out of my house," and he made one step toward the kitchen, whereupon she shot down between his legs.

The appellant kept standing there, just looking at her, and she tried to shoot again but her gun would not shoot. The deceased then pulled out his gun and shot behind the appellant, and the appellant went out. She heard the appellant outside saying, "I'll go back in there, I'll go back in there." She saw the appellant the next evening, about 8:00 p.m., standing outside their door with a gun. She heard the deceased tell him, "Go ahead on, now, Pete." The appellant replied, "No, I told you I was going to get you." She looked down and saw the appellant had a gun. He was standing on the porch outside the door. The deceased reached out to "get the door" and the appellant threw up his gun and shot the deceased.

Dave Jones, Jr. testified that after 6:00 p.m. on the date of the homicide the appellant came to his home and took a gun off his gun rack. He asked the appellant what he was going to do with his gun. The appellant handed the gun back to the witness and stated: "I'm going to get Dorothy Reen and Billy Joe. They shot at me yesterday. They didn't get me, but I'm going to get them." The appellant went out of the house, and the witness also left his house. When the witness returned he did not notice that his gun was missing, but a few minutes later the sister of the appellant brought the gun in.

The appellant testified that: There was an argument between his brother and the deceased on the day before the homicide. There was no argument between him and the deceased, and he followed the deceased into his home to discuss the matter. Dorothy Reen Jackson and the deceased both shot at him, but he did not know why they shot. Between the time he left there and the time of the homicide he saw the deceased several times at a distance and each time the deceased would have his hand in his pocket indicating that he had a pistol there. On one occasion when the deceased saw him, the deceased went to his car and got a pistol out and put it in his pocket. About 8:00 p.m., on the date of the homicide, the appellant was sitting on the porch with Tee Hardy, who lived across the street from the deceased. Hardy kept talking about what had happened the day before, and he told Hardy to forget about it. The appellant got off of Hardy's porch, intending to go to his aunt's. Hardy went out into the road with him,

and Hardy continued to talk about the matter. The deceased came to his door and pushed the screen door open, and stood on the outside of the door. The deceased had his pistol in his pocket and he told the appellant that he missed him Sunday, but he would not miss him this time. The appellant told the deceased that he had no argument with him, that if a person tried to take his life, he would protect it, and that he would suggest that the deceased not try to come out with the gun. Then the deceased "went to come out of his pocket with his gun." The appellant had the gun down by his side, and when the deceased "went to come up with the gun," the appellant "came up" with the gun and shot the deceased. He got the gun from Dave Jones' home while Jones was not at home.

The only evidence of justification was the appellant's testimony. The jury was authorized to find from the state's evidence that the appellant armed himself with a shotgun with the purpose of shooting the deceased, went to the home of the deceased with that gun visible, and threatened to shoot the deceased. The evidence authorized the charge given of which complaint is made.

*Judgment affirmed. All the Justices concur.*

ARGUED NOVEMBER 22, 1976 — DECIDED JANUARY 4, 1977 — REHEARING DENIED JANUARY 27, 1977.

*R. Alex Crumbley, Alan Armstrong, Rudolph Sullivan,* for appellant.

*E. Byron Smith, District Attorney, Kenneth R. Waldrop, Assistant District Attorney, Arthur K. Bolton, Attorney General, Daryl A. Robinson,* for appellee.