## 57038. SIMPKINS v. THE STATE.

QUILLIAN, Presiding Judge.

Defendant's husband's automobile was involved in an accident with another vehicle. When she arrived at the scene of the accident there were 25 to 30 other people at the site. The sheriff, chief of police, and a Georgia State Trooper were present. The sheriff asked the crowd to move back from the vehicles and to clear the road. All moved except defendant's mother. She said she did not hear him tell her to move. The sheriff grabbed her by the arm to remove her and immediately found himself involved in an altercation with the mother, her two daughters, and her two sons. The chief of police saw all five persons hitting the sheriff and the sheriff fighting back. He pulled his blackjack and tried to help the sheriff. After striking a couple of the participants with his blackjack he was struck from behind. The state trooper saw the melee, pulled his weapon and approached. The sheriff had gone to his vehicle, secured a blackjack, and was returning to the fray. The trooper said he holstered his weapon at that time.

The defendant testified that she was six months pregnant and the sheriff hit her with his blackjack and kicked her in the stomach. When she saw the trooper draw his gun, she drew hers, and "I just closed my eyes and shot." Of the six shots fired, three hit the sheriff, one hit the trooper, and another disabled the chief of police. She was convicted of three counts of aggravated assault. She brings this appeal. *Held:*

1. Defendant presented six character witnesses. Each witness had known defendant for most of her life. Each was aware of defendant's "reputation in the community for peacefulness." It was good. On cross examination each witness was asked similar questions and gave similar answers, i.e. "Q. That's something you know of your own knowledge? A. Yes. Q. Not what somebody else told you? Not hearsay." Another witness was asked: "Q. Not what somebody else said. A. No. Q. Based entirely on what you . . . A. On my knowledge." Other witnesses replied: "What I know—I ain't talked to nobody else," and "No—not based on hearsay," and "It's

what I know of my own self [sic]." After the defendant rested, the district attorney moved to strike "the entire testimony" of these six witnesses on the ground that "the testimony that they have rendered . . . does not satisfy the requirements of law . . . it wasn't based on anything that anybody else said—not on hearsay . . ." The objection was sustained and the character testimony was struck.

Both the plaintiff and the defendant cite *Gravitt v. State,* 220 Ga. 781 (141 SE2d 893) as supporting their position for the admissibility and exclusion of this evidence. We find one section of *Gravitt* to support exclusion of such testimony and another portion holds it is error to exclude such testimony. The testimony in *Gravitt* was almost identical to that in the instant case. In *Gravitt* the court held: "It was improper to exclude the testimony of two character witnesses who had testified on direct examination that they were acquainted with the character and reputation of the defendant and that it was good, even though they made contradictory statements on cross examination as to the basis of their testimony," for " 'credibility of a witness is a matter to be determined by the jury under proper instructions from the court'. . . 'Ordinarily . . . mere contradictions or ambiguities in the testimony of one *who is not a party to the case* do not require a rejection of his entire testimony, but the truth is to be determined by the jury.' " Id. 782 (8) and 787. This would appear to support admissibility of the character testimony in the instant case. However, the court also held: "If, under the entire testimony of each of these witnesses, it had appeared that his testimony as to the character and reputation of the defendant was based entirely on his personal opinion, the trial judge could properly have excluded his testimony." Id. at 788. These holdings may appear contradictory, at first, but they are not.

The Court of Appeals has a line of cases that hold " '[a]ny evidence depending on the knowledge of the witness, save what he had as to the reputation of the deceased, should be excluded.' " *Fountain v. State,* 23 Ga. App. 113, 117 (98 SE 178) (rev. on *other grounds* 149 Ga. 519). " 'The rule is clear. The witness can't testify what he knows of [the defendant's] character; it's his reputation

that is admissible—what the public says of a man.' " *Paschal v. State,* 30 Ga. App. 22 (3) (116 SE 899). "[C]haracter in our legal parlance has the same meaning as reputation; that is, what one's fellows say about him." *Clark v. State,* 52 Ga. App. 254, 255 (183 SE 92). "[D]irect examination to prove the character of the accused must be limited to questions concerning his general reputation in the community in which he lives." *Overby v. State,* 125 Ga. App. 759, 760 (188 SE2d 910). "[T]he witness' testimony, having been predicated upon her own knowledge and opinion rather than what other members of the community said about deceased, was properly stricken from the record." *Barrett v. State,* 140 Ga. App. 309, 311 (231 SE2d 116). See also, 29 AmJur2d 393, Evidence, §§ 344, 345; 32 CJS 44, Evidence, §§ 433, 434.

Thus, it is an evidentiary anomaly that—in proving general moral character, the law prefers hearsay, rumor, and gossip, to personal knowledge of the witness. For example, if a minister has known a member of his church through attendance at his church and in the community for his entire life, he would not be permitted to give his *personal* opinion of his character based on his knowledge. However, the neighborhood gossip—relying solely on hearsay and gossip with other gossips, would be welcomed to give her composite gossip score, while swearing that she had no personal knowledge about the same man.

It is inexplicable that we proclaim in legislation that "[t]he object of all legal investigation is the discovery of truth. [and] The rules of evidence are framed with a view to this prominent end, seeking always for pure sources and the highest evidence" (Code Ann. § 38-101), but in practice, we exalt rumor, gossip, and hearsay over personal knowledge of the witness.

Professor Wigmore gives an extended discussion of the history and policy behind this rule. See VII Wigmore on Evidence p. 142 et seq., §§ 1980-1986. He cites the original common law rule which permitted personal opinion of character, and the ensuing evolution to "that intangible, untestable . . . secondhand, irresponsible product of multiplied guesses and gossip which we term 'reputation.' " VII Wigmore on Evidence 167, § 1986. He is

of the opinion that "[t]he policy of the charge is highly questionable" (p. 142, § 1980) and was reached "by such a curious misunderstanding of precedents [p. 165, § 1986] . . . Never was the Opinion rule more misapplied than to exclude the present class of testimony [as to character] [p. 166, § 1986 (a)] . . . [T]here ought to be no hesitation between reputation and personal knowledge and belief [p. 166, § 1986 (b)]. . ."

Other prestigious jurisprudential groups agree that when character is admissible, personal knowledge and belief as well as reputation is acceptable as evidence. See, American Law Institute's Model Code of Evidence, Rule 306 (2); 13 Uniform Laws Annotated 231, Uniform Rules of Evidence, Rule 608 (a); Federal Rules of Evidence (1978), Rule 405. See also, McCormick on Evidence 334, § 158.

The Supreme Court once expressed the rule that "[a] witness who had long known the deceased *could give his opinion* of the latter's character as dangerous or otherwise" *(Turner v. State,* 70 Ga. 765 (4) (Emphasis supplied)), and later held in *Flemister v. State,* 81 Ga. 768 (4) (7 SE 642), that where "a witness testified that she knew the general character of another witness, that she had never heard any one saying anything against it, and that she knew such character of her own knowledge . . . it was not error to refuse to rule out the testimony because she also testified that *she was not testifying from what people said* as to such character, *but from her individual knowledge."* (Emphasis supplied.) That rule has now evolved to the one enunciated in *Gravitt,* supra, if "testimony as to the character and reputation of the defendant was based entirely on his personal opinion, the trial judge could properly have excluded his testimony." *Gravitt v. State,* 220 Ga. 781, 788, supra.

However, the rule stated in *Flemister* has been retained in part in *Powell v. State,* 101 Ga. 9 (1a) (29 SE 309), where the court held: "Reputation for character, good or bad, may be proved by showing what people generally say; and *reputation* for good character *may be proved by testimony showing that no one* within the knowledge of the witness *had 'spoken ill of the character of the person* . . . This is competent evidence for the jury to

consider, giving it the effect to which they think it entitled." (Emphasis supplied.) But see *Overby v. State,* 125 Ga. App. 759 (3), supra. It was this distinction that was made in *Gravitt,* supra, because therein the trial judge asked the witness: "You've never heard anybody in the community say anything good or bad about him." This distinction, though slight, permits reputation for good character to be shown by absence of evidence of bad character. See, *Hodgkins v. State,* 89 Ga. 761 (1) (15 SE 695); *Powell v. State,* 101 Ga. 9 (1a), supra.

Accordingly, as the testimony of the character witnesses in the instant case was based solely on the personal knowledge of the witness, *and* it was not elicited that they had never heard anyone say anything bad about the defendant, the court did not err in striking the testimony of all of the character witnesses. Although the author of this opinion would prefer to adopt the broader rule of evidence which would permit personal opinion of a witness based upon his knowledge, as well as the reputation of the individual, we are constrained to follow the holding of the Supreme Court in *Gravitt,* supra.

2. The defendant alleges the court erred in charging subsection (b) of Code Ann. § 26-902. Although the court also charged subsection (a) of Code Ann. § 26-902, the defendant does not contest application of that portion which justifies the use of force against another to defend himself or another, including the use of "force which is intended to or likely to cause death or great bodily harm." Subsection (b) charges the contrary, that is, when a person is not justified in using force specified in subsection (a). Defendant contends there was no factual basis in the evidence to justify the giving of subsection (b). We do not agree.

The sheriff ordered the crowd to move away from the immediate vicinity of the accident "to where they could work [investigate] the wreck." All persons moved back except defendant's mother. He stated that as he "started to catch hold of her arm and move her back down the road, she cursed and starting hitting me and four or five of them jumped on me at that time." Another witness testified: "[The defendant] run back up there and jumped onto him [the sheriff] . . . Just hitting him with her fist and hands."

Under these facts, and other similar testimony, subsection (b) of Code Ann. § 26-902 (CCG § 26-902; Ga. L. 1968, pp. 1249, 1272) was placed in issue by the evidence, as a person would not be entitled to use force authorized under Code Ann. § 26-902 (a) if (1) he "initially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant" or (3) "was the aggressor . . ."

Although the defendant testified she drew her pistol only after the state patrolman pulled his pistol, the state patrolman testified that he had reholstered his weapon before the defendant started shooting. Even though the evidence was in conflict, the evidence of the state authorized the charge. *Wilson v. State,* 233 Ga. 479 (6) (211 SE2d 757); *King v. State,* 238 Ga. 240 (232 SE2d 236).

3. The evidence of concert of action by the defendant, her sister and two brothers, authorized the giving of the charge of conspiracy to the court. It is not necessary that another person be indicted with the defendant for conspiracy (*Nelson v. State,* 187 Ga. 576 (2) (1 SE2d 641)), or that the defendant be charged with conspiracy (*Montgomery v. State,*128 Ga. App. 116 (3) (195 SE2d 784)) to justify a charge on conspiracy. Neither is it necessary to show a preliminary antecedent agreement (*Patterson v. State,* 199 Ga. 773, 775 (35 SE2d 504)), for conspiracy may be shown by circumstantial evidence (*Harris v. State,* 236 Ga. 242 (2) (223 SE2d 643)) such as conduct which evidences a common design of the participants. *Townsend v. State,* 141 Ga. App. 743, 744 (234 SE2d 368). Conspiracy is a question for the jury and we have concluded that the evidence of record was sufficient to authorize the charge. *Hurt v. State,* 239 Ga. 665, 673 (238 SE2d 542).

4. The last enumerated error avers error of the trial court in retaining the jury in deliberations from 6:30 p.m. until 4 a.m. the following morning. The transcript reveals that the jury was brought back after they had been out "some two hours" and stated agreement had been reached on two of three counts. The jury was again brought back at 1:30 a.m. and indicated it had made progress since the last inquiry and expressed the opinion that the jury could arrive at a verdict, but could not estimate the necessary

time. "At approximately 4:00 a.m." the jury arrived at and published the verdict.

"Discretion in regulating and controlling the business of the court is necessarily confided to the judge..." *Carr v. State,* 76 Ga. 592 (2c); Code Ann. § 24-104 (Code § 24-104). The decision of retaining a jury in session lies within the discretion of the court. *Grossman v. Glass,* 143 Ga. App. 464 (3) (238 SE2d 569). Unless an appellate court finds the legal rights of the parties prejudiced we will not interfere with the exercise of that discretion. While this court does not countenance retention of a jury to the early morning hours, we cannot say that requiring the jury to deliberate until the hour of 4 a.m. was such an abuse of discretion requiring reversal where the jury had already reached agreement on 2 of three counts and indicated it was making progress toward reaching agreement on the third and last count.

*Judgment affirmed. Smith and Birdsong, JJ., concur.*

ARGUED JANUARY 15, 1979 — DECIDED APRIL 12, 1979 — REHEARING DENIED MAY 3, 1979 — 

*Albert B. Wallace,* for appellant.
*Kenneth E. Goolsby, District Attorney, Dennis C. Sanders, Assistant District Attorney,* for appellee.