## 64010. HUDSON v. THE STATE.

DEEN, Presiding Judge.

The defendant was indicted for murder and convicted of manslaughter in the shooting death of her husband. She did not deny the shooting, which she explained at the time resulted from fear and in self-defense, he having beaten her and threatened her life.

1. The defendant attacked the admission of her oral statements on the ground they were not voluntary. Two peace officers, however, testified that they had given her the required Miranda warnings, and no question of the sufficiency of these was raised at the Jackson-Denno hearing. The question cannot of course be raised for the first time on appeal. *Pressley v. State,* 158 Ga. App. 638, 639 (281 SE2d 364) (1981). In any event, although there is some discrepancy in the trial transcript as to exactly what was said, which arises from the apparently faulty recollection of the officers during their testimony, this question is one of credibility addressing itself to the trier of fact. When the testimony of both officers is considered it is apparent that the defendant was in fact fully informed.

2. Appellant contends the court erred in failing to rebuke counsel for the state when he analogized this homicide to the Atlanta child killings. We have no record of what was said by counsel or what objection was made, and therefore cannot consider this enumeration. *McCallum v. State,* 155 Ga. App. 540 (271 SE2d 749) (1980).

3. The requests to charge on the subjects of justification and self-defense were sufficiently covered in the general charge. *Crawford v. State,* 236 Ga. 491, 493 (224 SE2d 365) (1970). Insofar as *Witt v. State,* 231 Ga. 4 (200 SE2d 112) (1973) is concerned, the error inherent in the instructions in that case did not occur here as the court specifically instructed the jury to acquit if they should believe the killing was justifiable in self-defense. Enumerations 3 and 4 are without merit.

4. The remaining enumeration of error charges that the trial court erred in striking the testimony of a witness to the good character of the defendant. We quote from the state's brief the excellent summary of the law in this area: "The general rule in Georgia is that evidence of the character of the defendant is irrelevant and immaterial upon the trial of the case. Ga. Code Ann. § 38-202. The defendant may place his character in evidence by testimony as to his reputation in the community in which he lives. *Freeman v. State,* 132 Ga. App. 742, 745 (1974). It is well settled law that it is the defendant's reputation in the community which is relevant and not the personal opinion of the witness. *Lynn v. State,* 140 Ga. 387, 395. Where a character witness states that his

information as to the reputation is from personal knowledge the court should exclude the testimony. *Id.* The essence of this rule is that the witness must testify to the reputation as it is perceived by the community and not as it is perceived by the witness."

It thus appears that evidence of good (or bad) character runs counter to the general rule of evidence for the proof of facts, which general rule is that it must be the knowledge of the witness and not merely hearsay. For example, where the issue is the mental condition of another, opinion evidence is proper (*Jarrard v. State,* 206 Ga. 112 (3) (55 SE2d 706) (1949)) but evidence of his reputation in the community for sanity or insanity is not. *Choice v. State,* 31 Ga. 424, 470 (7) (1860). Yet where the issue is good or bad character the quality of evidence to be adduced is the precise opposite. This rule was decried in *Simpkins v. State,* 149 Ga. App. 763 (256 SE2d 63) (1979), causing William B. Daniel, the author of Georgia Criminal Trial Practice, (1977 ed.), § 21-11, n. 7.2, 1980 Supp., to comment on that case: "In this excellent opinion of Presiding Judge Quillian he stated that the rule applied is not sound." Judge Quillian's decision discusses Professor Wigmore's history of "ensuing evolution" of the rule and approves but factually distinguishes *Gravitt v. State,* 220 Ga. 781, 786 (8) (141 SE2d 893) (1965), which he indicated is the better rule. In *Gravitt* the witness on direct examination answered the statutory questions to the effect that he was acquainted with the defendant's character and reputation in the community and "what I know is good." On cross examination he was asked: "In fact, you've never heard anybody say anything good about him, you have not heard, period, have you?" and he replied, "Well, that's true. I know myself." The Supreme Court held that ruling out the testimony of the character witness was reversible error. " 'The credibility of a witness is a matter to be determined by the jury under proper instructions from the court.' Code § 38-1805. 'Ordinarily . . . mere contradictions or ambiguities in the testimony of one *who is not a party to the case* do not require a rejection of his entire testimony, but the truth is to be determined by the jury.' *Wallis v. Watson,* 184 Ga. 38, 40 (190 SE 360). If, under the entire testimony of each of these witnesses, it had appeared that his testimony as to the character and reputation of the defendant was based *entirely* on his personal opinion, the trial judge could properly have excluded his testimony. *Since these witnesses testified on direct examination that they were acquainted with the character and reputation of the defendant and it was good, even though they made contradictory statements on cross examination as to the basis of their testimony, the trial judge in excluding their testimony was asserting the right to determine the credibility of these witnesses, a right belonging only to the jury.* This court has no way of

knowing whether the improper exclusion of the testimony of these two witnesses as to the good character of the defendant may have affected the verdict, and we must reverse . . ." (Emphasis supplied.) *Gravitt v. State,* 220 Ga. 781, 787, supra. That this is the sounder rule is pointed out in *Simpkins,* supra, as having the approval of Wigmore on Evidence, § 1986, McCormick on Evidence, § 158, and other recognized authorities. "It is inexplicable that we proclaim in legislation '[t]hat the object of legal investigation is the discovery of the truth' . . . but in practice, we exalt rumor, gossip, and hearsay over personal knowledge of the witness." Id., p. 765.

In the case at hand it is obvious that the facts in *Gravitt* are closer to the actual situation than were those of *Simpkins,* and we follow it the more willingly in the assurance that *Simpkins* was felt by its authors to have reached an unjust conclusion. In the case at bar the witness, called to the stand by the defense, answered in response to the statutory questions (see Code § 38-1804) that she knew the defendant, was familiar with her general reputation in the community for peaceableness and violence, had an opinion as to what that reputation would be and it would be peaceable. On cross examination over objection of defense counsel the witness was asked, "If you knew that she had had fights with this fellow regularly all the time would your idea of her reputation change?" and defense counsel, with the court's permission, then interposed a continuing objection to such line of questioning. The objection was overruled, the request to treat it as continuing was granted, and the following questions were interposed by the state: "Q. If you knew . . . Viola Hudson was all the time having fights with James Ridley, would this idea of her reputation being peaceful change? . . . If you knew Viola Hudson had taken this shotgun right here and stuck it up near the head of James Ridley while he was asleep and pulled the trigger, would your answer change? . . . If you knew that Viola Hudson took this gun . . . and stuck it up next to a sleeping man's head and pulled the trigger would your statement of her reputation for being peaceful change? . . . If you knew she pulled the trigger of this shotgun next to a sleeping man's head, do you think your answer would change as to whether or not she's a peaceful person? . . . Do you think peaceful people go around pulling a trigger on a 12-gauge shotgun to a sleeping man's head? . . . If you knew she pulled the trigger when a man was asleep do you think that your answer that she's a peaceful person would change? . . . This statement that you made when you answered this other lawyer's questions . . . is that answer based upon what other people tell you about her or is it based on what you yourself know about her . . . the answer that you said about the reputation for being peaceful . . . Is that answer based upon what other people tell you about Viola

Hudson or about what you know yourself?"

This continued on until the witness eventually agreed in answer to a question by the trial court that her testimony was based on her own knowledge, whereupon her testimony was ruled out in toto.

The ruling is subject to two defects. As stated in *Gravitt,* supra, the witness having testified as to reputation in the community any subsequent contradiction simply went to her credibility with the jury. This is especially true where the witness was obviously slow and naive, and the whole thrust of cross-examination appeared to be an attempt to draw out her personal knowledge of the subject. It is also interesting to note that the state's reference to the defendant's sister gave a completely false cast to her testimony, the sister having stated that the deceased had hit the defendant with a belt, tied her up with a belt, that she saw him strike her many times, once because she cooked something for him to eat which he didn't want, and so forth. Even a witness with more sophistication than this one might well have decided from the line of cross-examination that her personal knowledge was being sought, and she attempted to answer accordingly.

This is compounded by the wording contained in Code § 38-1804, ". . . as to *his knowledge* of the general character . . ." (emphasis supplied) means a witness' personal *knowledge* only as to *hearsay of others* regarding general character which is permissible, while on the other hand, *his knowledge* based on particular specific acts and events personally known by the witness independent of *hearsay of others* is impermissible on direct examination. Knowledge here has two different imports. What one personally observes himself is first hand knowledge as opposed to what others collectively tell him may have occurred which is a type of second hand knowledge.

Further, the continuing objection to this line of questioning should have been granted for another reason. The rule as to cross-examination of character witnesses is well stated in *Giles v. State,* 71 Ga. App. 736, 738 (32 SE2d 111) (1944), quoting from *Moulder v. State,* 9 Ga. App. 438 (71 SE 682) (1911): "On the direct examination of such witnesses as are offered to establish character, particular transactions or the opinions or statements of individuals can not be brought in; but on cross-examination this privilege may be exercised, for the purpose of showing the extent and foundation of the witness' knowledge" of what other persons have said of him. And the witness may also be asked if he has known "of particular acts which would tend to detract from a man's good character in the community." Id., p. 739. He may not, however, ask questions as to unproved crimes or acts of violence which are inflammatory, prejudicial, and suggestive of facts not in evidence, and such unwarranted cross-examination

constitutes reversible error. *Watson v. State,* 137 Ga. App. 530, 533 (224 SE2d 446) (1976). The continuing objection of the defense was that the line of questioning as to what *the witness herself* would think if she knew certain things to be true was irrelevant, confusing, and prejudicial. The answers elicited were no more than direct responses to the questions asked. It was error to rule out this testimony.

*Judgment reversed. Quillian, C. J., Shulman, P. J., Birdsong, Carley and Sognier, JJ., concur. McMurray, P. J., Banke and Pope, JJ., dissent.*

DECIDED SEPTEMBER 9, 1982 —
REHEARING DENIED OCTOBER 14, 1982 — ▮▮▮▮▮▮▮

*Gerald P. Word,* for appellant.
*Arthur E. Mallory III, District Attorney, Harger Hoyt, Assistant District Attorney,* for appellee.

POPE, Judge, dissenting.
I respectfully dissent. In my opinion there was no reversible error committed in the trial below. I would hold that the trial court correctly struck the testimony of appellant's character witness on the ground that the witness gave her personal opinion of appellant's good character rather than testifying as to her knowledge of appellant's reputation in the community.

On direct examination defense counsel asked the witness if she was familiar with appellant's reputation in the community for peaceableness or violence. The witness replied in the affirmative. Defense counsel then asked the witness to state her opinion as to that reputation. The witness gave her personal opinion of appellant's character rather than her reputation. She answered: "As far as I know she's a nice person." Attempting to elicit a correct response, defense counsel asked: "What I'm asking is: Would it be peaceable or violent?" The witness responded: "It would be peaceable." This concluded the direct examination.

The state then began cross-examination (portions of which are quoted in the majority opinion). Contrary to the conclusion reached by the majority that the state was seeking the witness' personal knowledge of the subject, my reading of the transcript is that the state was simply trying to impeach the witness. By suggesting adverse facts in evidence (which distinguishes this case from *Watson v. State,* cited by the majority), the state was obviously hoping the witness would staunchly maintain her initial position, with the desired effect being to discredit her before the jury.

That the state was not seeking the witness' personal knowledge

is evinced by the fact that the questions posed (see majority opinion) were all variations of the first one, to which the witness responded incorrectly, and were designed to elicit a responsive answer. The state asked: "If you knew that she had regularly had fights with the father of her children, James Ridley—." The witness cut in: "I don't know anything about him." The following dialogue illustrates the state's objective. "Q: I'm saying if you knew that . . . would your opinion change? [Objection. Objection overruled.] Q: If you knew that she had had fights with this fellow regularly, all the time, would your idea of her reputation change? A: You're talking about if I had saw it? Q: If you knew it. If you knew . . . would your answer change? A: I couldn't never say they fighted, 'cause I never saw him but a time or two." "The Court: Answer the question. . . ."

After several more attempts to ascertain from the witness if having known the suggested facts would have led her to give a different opinion as to appellant's reputation in the community, the witness finally answered: "Well, I don't know." The state then began to probe into the basis of the witness' final answer on direct, that is, whether the answer given was based upon what she herself knew about appellant or upon what other people in the community had told her. The witness eventually answered: "Well, like I said, as far as I know about her she was always peaceable."

The state then moved to strike the entire testimony. The court reserved ruling on the motion, allowing defense counsel the opportunity to conduct re-direct examination first. The answers during re-direct were much the same as those during direct and cross: unresponsive. Both counsel having failed to get any clear answers from the witness, the court interposed and asked her: ". . . Is this based upon your knowledge or on your knowledge of her reputation in the community?" The witness answered: "It's in the community, 'cause I always figured she was just quiet." The court asked the question again and the witness responded: "It's on my knowledge . . . ." The court then instructed the jury to disregard any testimony of the witness. Defense counsel voiced no objection.

While being fully cognizant that the Supreme Court reversed a judgment because of a ruling under substantially similar circumstances in *Gravitt v. State,* supra, I would hold that the ruling here was not reversible error. In dicta, the *Gravitt* court stated, "If, under the entire testimony of each of these witnesses, it had appeared that his testimony as to the character and reputation of the defendant was based entirely on his personal opinion, the trial judge could properly have excluded his testimony." *Gravitt,* supra at 788. I am persuaded that, from the entire testimony of the witness in this case, she was giving her personal opinion of appellant's good

character rather than testifying as to her opinion of appellant's reputation in the community.

Unlike the situation in *Gravitt,* defense counsel in this case never established the basis of the witness' testimony. The witness answered the statutory question from the standpoint of her personal knowledge of appellant's character. Defense counsel's follow-up question was ambiguous, rendering the meaning of the witness' answer uncertain. On cross-examination it was shown the witness was testifying from personal knowledge. On re-direct it was again shown. Thus, this case is distinguishable from *Gravitt,* where the statutory basis was established, but then on cross the witness contradicted himself as to the basis. Here, the only basis established was that of personal knowledge. The transcript speaks for itself on this point and defense counsel's failure to object to the striking of the testimony, after having objected to the state's line of questioning, was a tacit admission of this. Therefore, I find no error in striking the testimony and, there being no other reversible error, I would affirm the judgment.

I am authorized to state that Presiding Judge McMurray and Judge Banke join in this dissent.