### 75755. LEE v. THE STATE.
(367 SE2d 115)

McMURRAY, Presiding Judge.

Defendant was indicted for burglary and for armed robbery. The evidence adduced at trial was as follows:

At approximately 2:30 in the afternoon on May 7, 1986, the victim drove into her driveway and noticed a two-door "gray hatchback" automobile parked (backed up) in the garage of her house. The doors of the vehicle were open and "the hatchback was up." Defendant came from the victim's house with a handgun and ordered the victim out of the car. The victim did not comply and another man, also armed with a handgun, came from the victim's house. Defendant again ordered the victim out of her car. She complied and defendant's accomplice told the victim to run into the woods. Defendant then suggested that they "tie her up in the house." Defendant's accomplice

---

ignored this suggestion and once more ordered the victim to run into the woods. The victim complied; however, before fleeing she noticed that the "hatchback" automobile was "loaded" with "things." Upon returning to her house a few moments later, the victim discovered that the armed men had fled in the "hatchback" automobile and that several items were missing from her house, including the victim's telephones. The victim subsequently drove to a nearby store and summoned the police. Defendant was found guilty on both counts of the indictment and this appeal followed the denial of his motion for new trial. *Held*:

1. Defendant first contends the evidence was insufficient to support the jury's verdicts as "the only evidence placing [him] at the scene of the crimes is the testimony of the victim who identified [him] only after several photographic and live lineups were performed." In support of the assertion that he was misidentified, defendant points to the testimony of his brother, Larry Lee, who testified that he and Bruce Lee, defendant's other brother, committed the crimes charged.

An examination of the record reveals that two photographic lineups and three "live" lineups were displayed to the victim. The first photographic lineup was conducted on June 19, 1986, and comprised of six photographs of men with similar physical characteristics. A five-year-old photograph of defendant, which was acquired from police records, was included in this lineup. The victim was unable to identify defendant. (The victim explained on direct examination that she was unable to identify defendant's photograph because she was under "stress" at the time and the photograph did not reflect defendant's current physical characteristics.) The second photographic lineup was conducted on June 24, 1986. A photograph of defendant was not included.

The first "live" lineup was conducted at the Chatham County Police Department and the victim was unable to identify any of the participants of the lineup. The second and third "live" lineups were conducted on July 23, 1986, at the Glynn County, Georgia jail. Both lineups included six men of similar physical characteristics who were chosen from the inmate population at the jail. The victim was in a separate room and concealed from the participants of the lineups by special lighting. The victim was not assisted when she examined the lineup participants.

Defendant was not included in the first lineup conducted at the Glynn County jail. However, defendant participated in the second lineup and he was immediately identified by the victim as one of the perpetrators of the crimes.

Contrary to defendant's assertion, we find none of the pre-trial identification procedures used by law enforcement officers to be impermissibly suggestive to the victim. Further, we find little, if any,

likelihood of misidentification of defendant by the victim at trial as the evidence shows that the victim had more than adequate opportunity to observe defendant during commission of the crimes. Whatever conflicts existed in the evidence as to the identity of defendant, they were resolved against him by the jury. The evidence presented at trial was sufficient to convince a rational trier of fact, beyond a reasonable doubt, that defendant was one of the perpetrators of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). See *Hamilton v. State*, 255 Ga. 468, 469 (1) (339 SE2d 707). This enumeration of error is without merit.

2. In his second enumeration of error, defendant contends the trial court erred in allowing the State's attorney to refer to him as a "bandit" during closing argument.

"In *Miller v. State*, 226 Ga. 730, 731 (177 SE2d 253) (1970) the prosecutor's characterization of the defendant 'as a brute, beast, an animal, and a mad dog who did not deserve to live . . .' was held not to require a mistrial." *Berryhill v. State*, 235 Ga. 549, 552 (7) (221 SE2d 185). Under the circumstances of the case sub judice, we do not find the State's attorney's characterization of defendant as a "bandit" grounds for reversal. This is particularly true since this characterization of defendant was supported by evidence adduced at trial. "[T]he unflattering 'characterization of a defendant does not require a new trial when such descriptions are supported by the evidence.' [*United States v. Malatesta*, 583 F2d 748, 759 (5th Cir. 1978), cert. denied, 440 U. S. 962 (99 SC 1508, 59 LE2d 777)]." William W. Daniel, Ga. Criminal Trial Practice (1986 ed.), 578, § 23-6.

3. Lastly, defendant contends the trial court erred in instructing the jury to disregard the following testimony: "Q. [Defendant's attorney] To your knowledge has [defendant] ever been in trouble? A. [Defendant's witness] No, sir. He's never been in any trouble." Defendant argues that this testimony was relevant to his good character.

"[T]he general character of the defendant and his conduct in other transactions is irrelevant unless the defendant chooses to put his character in issue. [Cits.]" *Bacon v. State*, 209 Ga. 261, 262 (71 SE2d 615). "[A] witness' opinion of a party's character which is based solely upon the witness' personal observation of the party is not an approved mode of character evidence, *Waters v. State*, 248 Ga. 355 (5) (283 SE2d 238) (1981), and is subject to being struck, *Hudson v. State*, 163 Ga. App. 845 (4), at 845-846 (295 SE2d 123) (1982). [In the case sub judice,] the . . . question and answer, if they can properly be characterized as the equivalent of character evidence, clearly focused on personal observation and were eligible for purging." *Franklin v. State*, 251 Ga. 77, 80 (303 SE2d 22). Consequently, the trial court did not err in striking the witness' testimony from the record. See *Jones v. State*, 257 Ga. 753 (1) (363 SE2d 529).

*Judgment affirmed. Sognier, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I fully concur in Divisions 1 and 3. I agree with the result of the ruling in Division 2, but for the reason that the remark did not constitute reversible error. In this regard it is analogous to *Castell v. State,* 250 Ga. 776, 788 (8) (a) (301 SE2d 234) (1983).

Appellant's contention is that his objection to the statement should have been sustained because of a violation of OCGA § 17-8-75. What the district attorney said was: "Mrs. Allen [the victim] — and I'm gonna get to this when I talk to you again later — has positively identified this bandit over here." This implied his personal belief, directed to the jury, that defendant is a bandit. Considering the context and the nature of the statement, however, it does not rise to the level of harm which required reversal in the case cited by appellant, *Forster v. State,* 60 Ga. App. 598 (4 SE2d 498) (1939).

DECIDED MARCH 11, 1988.

*Phillips D. Hamilton,* for appellant.
*J. Lane Johnston, District Attorney,* for appellee.