A93A0861. GEORGIA PORTS AUTHORITY et al.
v. HUTCHINSON.
(434 SE2d 791)

BIRDSONG, Presiding Judge.

Charles Hutchinson III sued Georgia Ports Authority and crane operator Cory Green for damages to his hand, caused when Green dropped a 12-to-20 ton container box while Hutchinson was hooking a "locking shoe" to the box. Hutchinson contends the crane and crane operator were controlled by the Ports Authority, and that although crane operators use radios to communicate with other dock personnel, the procedure for communication between crane operators and longshoremen ninety feet below was inadequate and unsafe, consisting

merely of hand signals by a longshoreman with a white paper cup stuck on three fingers. Hutchinson claimed punitive damages and showed evidence of other injuries caused by unsafe operating practices and careless crane operators. The Ports Authority contended the flagman, who did not testify, had made a signal; Hutchinson claimed Green dropped the container box without a signal. The jury awarded plaintiff "damages in the amount of $394,750, which includes the amount of $12,127.57 for his medical expenses." The Ports Authority appeals. *Held*:

1. The trial court correctly denied a directed verdict to the Ports Authority as to liability. A directed verdict is proper only where there is no conflict in the material evidence and the evidence, with all reasonable deductions, demands a certain verdict. OCGA § 9-11-50 (a). On appeal we view the evidence in favor of the verdict. Appellant says the evidence undisputedly establishes that the flagman gave a signal to lower the box, and that the only witness who says otherwise was impeached by his deposition testimony. However, the testimony as to what this witness said in deposition is unclear. The witness insisted at trial that the flagman gave no signal. We presume the jury reconciled any inconsistencies in the witness' testimony. *Hudson v. State*, 163 Ga. App. 845 (295 SE2d 123). The evidence does not demand a finding that a signal was given and it does not demand a verdict for the Ports Authority. *Union Camp Corp. v. Daley*, 188 Ga. App. 756, 758 (374 SE2d 329).

2. Appellant contends the trial court erred in refusing to charge the jury on appellee's equal or superior knowledge of dangerous conditions. This principle applies to "static" defective or dangerous conditions on property. See *Colbert v. Piggly Wiggly Southern*, 175 Ga. App. 44 (2) (332 SE2d 304). There was debate that the crane was improperly equipped and thus "defective," but the liability involves appellant's negligence in requiring the use of inadequate hand signals to crane operators, and the negligence of the operator in dropping the container box without a signal. Appellant's claim that appellee had equal/superior knowledge of a "defect" does not address proximate cause, which was the lowering of the box. Moreover, appellant has consistently claimed that even if the equipment was defective, the use of hand signals was safe and adequate to overcome any defect; yet by contending appellee is barred from recovery because he had equal/superior knowledge of a defect, appellant is contending the operator had no duty at all to watch for hand signals. This is inconsistent and is an argument that crane operators and Ports Authority enjoy absolute immunity for injury to a longshoreman related to hand signalling. It is also a contention that appellee assumed the risk of this injury by accepting his employment, which appellant is estopped to assert because it is inconsistent with the contention that the hand signal pro-

cedure was safe and adequate. *Shepard v. Streetman*, 198 Ga. App. 474, 475-476 (402 SE2d 87). A jury charge that appellant would not be liable if appellee had equal or superior knowledge of defective conditions in the crane was not only unwarranted but would have been misleading.

Even if such a charge were authorized, the failure to give it was not reversible error, as the jury was fully charged that appellee had a duty of ordinary care for his own safety and that appellant would not be liable unless its negligence was the proximate cause of appellee's injuries. See *Colbert*, supra.

3. The failure to give a charge per OCGA § 51-11-7: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover," was not reversible error. The court charged on appellee's duty to exercise reasonable care for his own safety and that appellant could not be liable unless its negligence was the proximate cause of appellee's injuries. Under these charges, the jury found appellant's negligence was the proximate cause of the injury. Although appellant suggests appellee was negligent, appellant cites no such evidence except that someone shouted that the box was dropping and the box was dropped at slow speed. Even assuming the box was dropped at slow speed, the evidence showed appellee moved his hand as soon as he realized the box was being dropped and acted fast enough to jerk his hand out of his glove; the glove was crushed by the box. As there was no evidence appellee was negligent, a charge on contributory negligence was not required. See *Glenridge Unit Owners Assn. v. Felton*, 183 Ga. App. 858 (360 SE2d 418).

4. The trial court did not err in charging that if the Ports Authority or its agent was negligent, any negligence of the stevedore or other longshoremen was irrelevant. Appellant concedes this charge is correct as to joint and several liability (see OCGA § 51-12-31; *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154 (256 SE2d 916)), but says the charge suggested the jury could ignore negligence of appellee, his co-workers or the stevedore. We disagree. The court did not charge the jury it could ignore appellee's negligence. The jury was charged not to find appellant liable unless they found its negligence was the proximate cause of the injury; the jury did not have to consider the negligence of third parties, as appellant is liable for the entire damages, jointly and severally with any other tortfeasor, and there is no accounting of comparative negligence among tortfeasors. Id.

5. Appellant's enumeration as to the trial court's failure to give charges "on the issue of control" is deemed abandoned, as appellant in its brief does not describe the substance of these charges and cites no law as to why they should have been given. *Mitchell v. Southern Gen. Ins. Co.*, 194 Ga. App. 218 (7) (390 SE2d 79).

6. The trial court correctly excluded evidence of a "tariff," which appellant contends would have proved it did not control the crane and crane operator. The tariff's disclaimer of liability was contrary to public policy (see *City of Albany v. Oxford Constr. Co.*, 221 Ga. 872, 874 (148 SE2d 324)), so even if it were relevant it would have been prejudicial. See *MacNerland v. Johnson*, 137 Ga. App. 541 (224 SE2d 431).

7. The trial court did not err in charging the jury as to certain OSHA standards on grounds that OSHA does not apply to appellant, as it is a department of the State and is not an "employer" under 29 USCA § 625 (5). Appellant's only objections to this charge were that OSHA was fully complied with and that the stevedore's violation of OSHA regulations might be wrongly imputed to appellant. The objection to the charge made on appeal was thus waived. *T. G. & Y. Stores Co. v. Waters*, 175 Ga. App. 884, 886 (334 SE2d 910).

8. The charge was not objectionable on grounds that the evidence proved OSHA regulations were complied with, as this was an issue of fact for the jury at trial, objections to the jury's consideration of OSHA regulations having been waived.

9. The trial court correctly denied a motion in limine to exclude mention of equipment which appellant contends it was under no duty to provide. Georgia law favors admissibility of evidence. *Daras v. State*, 201 Ga. 512, 513 (411 SE2d 367). The trial court did not abuse its discretion in allowing evidence as to equipment which appellant provides for other purposes but does not provide for communication with longshoremen. This evidence was relevant to the issue of appellant's negligence in the use of hand signals with paper cups in these circumstances.

10. The trial court did not err in permitting the witness Liakakis to testify as an expert for procedures where hand signals or sight alone is insufficient. See OCGA § 24-9-67. The weight to be accorded Liakakis' testimony was for the jury. See *Hicks v. State*, 196 Ga. App. 311 (2) (396 SE2d 60).

11. The charge that appellee knew better than any doctor the extent of his pain and suffering was not reversible error, for appellee's statements were statements of fact, but doctors' testimony would be opinion. OCGA § 24-9-67. The value of any such testimony is a matter of credibility and weight. *Arnold v. State*, 155 Ga. App. 569 (271 SE2d 702).

12. Appellant contends the trial court allowed appellee's counsel to argue facts not in evidence, but at trial appellant made no objection to those remarks. *T. G. & Y. Stores*, supra. See *Pheil v. Southern Bell Tel. &c. Co.*, 201 Ga. App. 846 (4) (412 SE2d 609) as to procedure for objection to arguments; see *Smith v. State*, 189 Ga. App. 244, 246 (375 SE2d 496).

13. The trial court erred in denying appellant's motion for directed verdict as to punitive damages.

(a) An award of punitive damages against the Georgia Ports Authority was against Georgia public policy and is impermissible as a matter of law and void. See *MARTA v. Boswell*, 261 Ga. 427 (405 SE2d 869). The Georgia Ports Authority is a governmental entity created pursuant to the Georgia Ports Authority Act (OCGA § 52-2-1 et seq.) and is an arm of the State. OCGA § 52-2-4. A punitive damage award against a governmental entity or arm of the State violates public policy because it burdens the very citizens for whose benefit the wrongdoer is being chastised. Such damages are assessed over and above the amount necessary to compensate the injured party, and are likely to be accompanied by an increase in taxes "or a reduction of public services" for the citizens it serves, who are themselves blameless. Id. at 428. The Ports Authority is created "in all respects for the benefit of the people of this state and is a public purpose and . . . will be performing an essential governmental function," of such importance that the Ports Authority is even made exempt from all taxes and levies by the State. OCGA § 52-2-37. The award of punitive damages against the Ports Authority would result in a "reduction of public services" (*MARTA v. Boswell*, supra), would ultimately be a charge against the public and would tend to cripple the Ports Authority's function as a servitor of the people. The same principles decided in *MARTA v. Boswell* apply in this case; thus a punitive damages award against the Ports Authority is contrary to public policy and impermissible as a matter of law.

The cause of action in this case arose prior to the Supreme Court's decision in *MARTA v. Boswell*, but there is no vested right to sue for punitive damages, which are a penalty. *Teasley v. Mathis*, 243 Ga. 561, 563 (255 SE2d 57). The right to a penalty may vest in two ways (see *Terry v. State Farm &c. Ins. Co.*, 205 Ga. App. 224, 225 (422 SE2d 212)), neither of which applies here. Although appellant did not raise this issue below or on appeal, the judgment of a court which is void for any cause is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it. OCGA § 9-12-16; *Parker v. Bond*, 47 Ga. App. 318 (170 SE 331). See *Troup County Bd. of Commrs. v. Public Fin. Corp.*, 109 Ga. App. 547 (136 SE2d 509); OCGA 9-11-60 (a).

(b) The verdict does not reflect that punitive damages were included in the award and ordinarily we do not speculate that they were, for an ambiguous verdict is to be construed so as to uphold the verdict if possible. See *West Ga. Pulpwood &c. Co. v. Stephens*, 128 Ga. App. 864 (3) (198 SE2d 420) (physical precedent; Court of Appeals Rule 35 (b)), and cases cited therein, and see *Haughton v. Judsen*, 116 Ga. App. 308, 310 (157 SE2d 297). Appellant did not object

to the form of the verdict, so any deficiency in the form of the verdict was waived. *Perryman v. Rosenbaum*, 205 Ga. App. 784, 787 (423 SE2d 673); *Golosky v. Wherle*, 117 Ga. App. 335 (160 SE2d 614); *Herndon v. Sims*, 7 Ga. App. 675 (3) (67 SE 835). However, the size of this award ($374,750) in relation to the medical damages ($12,127.57) is so great as to raise an inference that punitive damages were considered in the award. See *Petrolane Gas Svc. v. Eusery*, 193 Ga. App. 860, 862-863 (389 SE2d 355). Where there is a reasonable inference that the verdict or part of it may be void and not merely deficient, we are not required to presume it is valid if errors of law were committed in the trial which would tend to affect the validity of the award.

There is a substantial possibility that this verdict was affected by the trial court's erroneous denial of the Ports Authority's motion for directed verdict on the issue of punitive damages, with the consequent admission of irrelevant and prejudicial evidence of other injuries to and acts toward other persons; and by the trial court's erroneous and unauthorized jury charge on punitive damages, to which appellant specifically objected. Accordingly, we find the trial court's denial of a directed verdict on the issue of punitive damages and the attendant errors to be harmful as a matter of law.

The verdict of liability is affirmed, but the case is remanded to the trial court with direction to strike the award and permit the jury to enter a new award in proceedings not inconsistent with the law and with this opinion.

*Judgment affirmed in part and reversed in part. Andrews, J., concurs. Pope, C. J., concurs specially.*

Pope, Chief Judge, concurring specially.

Although I agree with the holding in Division 13 of the majority opinion that the trial court erred in denying Georgia Ports Authority's motion for punitive damages, I write separately to state how my analysis of this issue differs from the majority opinion.

1. There are additional cases concerning the issue of punitive damages against authorities not mentioned in the majority opinion that are important to the analysis of this issue. Prior to our Supreme Court's decision in *MARTA v. Boswell*, 261 Ga. 427 (405 SE2d 869) (1991), the appellate courts of this state allowed punitive damages to be assessed against "authorities." In *Hodges v. Effingham County Hosp. Auth.*, 182 Ga. App. 173 (355 SE2d 104) (1987), this court allowed a hospital authority to be sued for punitive damages on the basis that the statutory "sue or be sued" language in the statute creating the authority imposed the same tort liability upon a "public body corporate and politic as is imposed upon a private corporation." Id. at 175. Although in *MARTA v. Boswell*, supra, our Supreme Court did not expressly overrule *Hodges*, by adopting the rationale set forth

in *City of Newport v. Fact Concerts*, 453 U. S. 247 (101 SC 2748, 69 LE2d 616) (1981) and holding that punitive damages may not be assessed against governmental entities because such awards punish the taxpayers through either an increase in taxes or a reduction in the public services available to the citizens, our Supreme Court made it clear that governmental entities will no longer be held liable for punitive damages.[1] Interestingly approximately three months after *Boswell* was decided, our Supreme Court issued an opinion sustaining a punitive damage award against the Hospital Authority of Gwinnett County. *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. 613 (409 SE2d 501) (1991), cert. den., ___ U. S. ___ (112 SC 1175, 117 LE2d 420) (1992). In a footnote, however, the court noted that the issue of whether punitive damages are appropriately awarded against a hospital authority had not been raised in that case and cited the *Boswell* decision, apparently signalling that if that issue had been raised it would have reversed the imposition of punitive damages against the hospital authority. Accord *City of Columbus v. Myszka*, 246 Ga. 571, 573 (272 SE2d 302) (1980) (holding that absent explicit statutory authority a municipality cannot be held liable for punitive damages).

2. I agree with the majority's conclusion that there is a substantial possibility that the verdict was affected by the trial court's erroneous denial of the Ports Authority's motion for directed verdict on the issue of punitive damages. Because punitive damages are not authorized against the Ports Authority, I must also concur in the majority's conclusion that the award of damages in this case must be struck and a new trial on damages must be conducted upon remand. We would not have to engage in speculation about the kind of damages comprising the general verdict rendered in this case if a proper verdict form had been submitted to the jury. See *Clarke v. Cox*, 197 Ga. App. 83, 84 (397 SE2d 598) (1990) (suggesting in cases seeking punitive damages pursuant to OCGA § 51-12-5 "the form of the verdict should provide the jury with guidelines to separately determine the issue of punitive damages for each tort.")

For that reason, I am uncomfortable with seemingly "rewarding" the Ports Authority's conduct concerning the form of the verdict. The record reflects that the *plaintiff* rather than the Ports Authority objected to the trial court's ruling concerning the form of the verdict to be submitted to the jury. The plaintiff *pleaded* with the court to allow a special verdict form to be submitted to the jury which would allow the jury to specify an amount for punitive damages, the trial court refused to allow such a form to be submitted to the jury and

---

[1] In *Cox Enterprises v. Carroll City/County Hosp. Auth.*, 247 Ga. 39, 46 (273 SE2d 841) (1981), our Supreme Court held that the Carroll City/County Hospital Authority was a governmental entity.

ruled "[i]f [the jury] want[s] to award any [punitive damages], they can award them in the sum that is awarded in the general verdict, we the jury, find . . . in favor [of the plaintiff] and against the defendant in the amount of blank dollars, of which we include the amount of blank dollars for medical expenses." Thus, the trial court's ruling made it impossible for the jury to specify the amount of punitive damages if they found punitive damages were appropriate.

Throughout this colloquy about the proper form of the verdict which consists of approximately eight pages of the transcript, the Ports Authority acquiesced in the court's ruling. Finally, after the jury was charged, the plaintiff withdrew its objection to the form of the verdict. After the verdict was returned neither the plaintiff nor the Ports Authority objected to the form of the verdict. At one point during the colloquy the plaintiff suggested that the reason the Ports Authority was willing to acquiesce in the trial court's ruling on the form of the verdict is because it would invite error on appeal. I am inclined to agree. It is well-settled that a party may not acquiesce in a ruling of the trial court and then complain of that ruling on appeal. *Blaxton v. Clemens*, 202 Ga. App. 668, 669 (415 SE2d 304) (1992). For that reason, to the extent that this decision and our decision in *Petrolane Gas Svc. v. Eusery*, 193 Ga. App. 860 (389 SE2d 355) (1989) allow parties to benefit from rulings they acquiesced in at trial those cases should be specifically limited to their facts and only be followed when the ruling of the trial court constitutes substantial error and is harmful as a matter of law. See *Ray v. Stinson*, 254 Ga. 375 (329 SE2d 502) (1985).

DECIDED JULY 16, 1993 —
RECONSIDERATION DENIED JULY 28, 1993 —

*Michael J. Bowers, Attorney General, John B. Ballard, Jr., Roland F. Matson, Senior Assistant Attorneys General, Ranitz, Mahoney, Coolidge & Mahoney, Thomas J. Mahoney, Jr., Thomas J. Mahoney III, R. Stephen Flagler*, for appellants.

*David H. Fritts, Billy E. Moore, Shari S. Miltiades*, for appellee.