CARR *vs.* THE STATE OF GEORGIA.

1. Under the act of 1878 (p. 34), the clerk of the superior court and ordinary were members of the board of jury commissioners, and, therefore, were required to certify the lists of grand and traverse jurors; but upon the passage of the act of 1879 (p. 29), they ceased to be so, and the clerk of the superior court was made the clerk of the board of jury commissioners, and was required to perform all the clerical duties required by law to be performed. Thus he becomes the ministerial officer of the board, and is not required to sign the certificate of the names in the respective jury-boxes, but merely to transcribe them into the book required and to deposit it in his office; and a list certified by the jury commissioners is sufficient.

2. Where, on the trial of a defendant charged with assault with intent to murder, one of the jurors was put upon the defendant by the state, and after defendant's counsel had occupied a minute

and a half in consultation, the court ordered the juror to be sworn, and no objection or protest thereto was made by the defendant or his counsel nor further time asked, this furnished no ground for a new trial, although the defendant's counsel had not consumed, on an average, one minute in passing on each juror.

(*a.*) Whether the 41st common law rule (Code, p. 1351), providing that, in striking juries, not more than one minute shall be allowed to either party for each strike, applies to felonies, where juries are not selected by what is commonly understood by the term striking, but more formally and deliberately by putting each juror upon his *voire dire* to test his competency, and if found competent, allowing the state to challenge him peremptorily or accept him and put him upon the prisoner, who, in turn, may challange or accept him. *Quære?*

(*b.*) In such a case, reasonable time should be given to the defendant to make his choice, but after the lapse of such time as the judge may consider reasonable, the presiding judge should act in the matter; and if more time is desired, he should be notified of the fact and asked for indulgence. He is not bound by any unbending rule, but even after ordering the juror to be sworn, he might revoke his order and allow the defendant to object, or make such other disposition of the juror as would be proper under the law, upon application for that purpose.

(*c.*) Discretion in regulating and controlling the business of the court is necessarily confided to the judge; and this court should never interfere with its exercise unless it is made to appear that wrong or oppression has resulted from its abuse.

3. What a disinterested by-stander, who witnesses the conflict going on between the defendant and the party assailed, may say during the heat of the engagement, is not admissible in evidence, especially when the declaration amounts to nothing more than the declarant's opinion as to the defendant's motive or purpose for engaging in and prosecuting the fight. Such a declaration is no part of the *res gestæ*, and such statements of impressions could not generally be testified to even by a witness, at least without stating the facts on which such inpressions were founded.

4. No other exceptions were insisted on in this court.

April 6, 1886.

Jury and Jurors. Criminal Law. Practice in Superior Court. Evidence. *Res Gestæ.* Before Judge LUMPKIN. Hancock Superior Court. October Term, 1885.

John Carr was indicted for assault with intent to murder and was found guilty. He moved for a new trial on

the grounds which are substantially set out in the decision.

The motion was overruled, and he excepted.

C. W. DuBose; Jordan & Lewis, for plaintiff in error.

W. M. Howard, solicitor general, by brief, for the state.

Hall, Justice.

1. On being arraigned, the defendant pleaded specially that the bill of indictment was found by grand jurors whose names did not appear on the list certified, as required, by the clerk of the superior court and ordinary, although it was certified properly by the jury commissioners.   This plea was overruled, and this forms the first exception to the judge's decisions insisted on in this court.

By the 4th section of the jury act, approved December 16th, 1878, the clerk of the superior court is required to make out in a book lists of the names respectively contained in the grand jury-box and in the traverse jury box, alphabetically arranged, and place said book in his office after the lists therein have been certified by the ordinary, clerk and commissioners to contain respectively all the names placed in said jury-boxes. (Acts, p. 34).  The reason for requiring these lists to be certified by the ordinary and clerk, as well as the persons named as commissioners, is, that by §1 of that act these officers, together with these three persons, constitute the jury commission.   But by the act approved 17th October, 1879 (Acts, p. 27), these officers were dropped from the board of jury commissioners, and it was thereby provided that the board should be composed of six discreet persons, to be appointed by judge of the superior court, " who are not county officers." The board thus constituted, in performing their duties, were required to do so in conformity to the provisions contained in the first, second and third sections of the above cited act of the 16th of December, 1878.   By section 3d of this

last act, the clerk of the superior court is made the clerk of the. board of jury commissioners, and is required to perform all the clerical duties required by law to be performed, for which service he is to receive a fixed compensation (three dollars per day) to be paid from the county treasury. He thus becomes the ministerial officer of the board, and is not required to sign the certificate of the names in the respective jury-boxes, but merely to transcribe them into the book, and to deposit it in his office. The certificate in this case was in due form of law, and there was nothing in the plea.

2. The next ground of the motion for a new trial states that, " while the jury was being impanelled to try the case, and the name of J. D. Underwood, one of the jurors put upon the defendant by the state, was reached, and while defendant's counsel were consulting, the court ordered the juror to be sworn before he had been accepted by the defendant, and when defendant's counsel had not consumed an average of one minute in passing on such jurors, but had consumed one minute and a half in consulting about the juror, Underwood, and when the court ordered him to be sworn, no objection or protest was made thereto by the defendant or his counsel."

The time allowed by the 41st common law rule of the court (Code, p. 1351) in striking juries is not more than one minute to either party for each strike; but it is questionable if this rule applies to trials for felonies, for in such cases, juries are not selected by what is commonly understood by the profession as striking, but in a much more formal and deliberate manner; each juror is put upon his *voire dire* to test his competency, and if found competent, the state may either challenge him peremptorily or accept him and put him on the prisoner, who in turn may challenge or accept. Reasonable time should be given him to make his choice, but after the lapse of such time as the judge may consider reasonable, then the presiding judge should act in the matter; if more time is

desired, he should be notified of the fact and asked to indulge the party; and for proper reasons, the request would doubtless be granted. In this matter, he is bound by no unbending rule, and even after he had ordered this juror to be sworn, if he had been notified that there was any objection to him, it is more than probable that he would have revoked his order, and would have allowed the defendant to object, or have made such other disposition of the juror as was proper under the law. But no objection was intimated; no protest was made; the defendant and his counsel were present and acquiesced in what was done; if they were unwilling to have this juror on the panel, they should have spoken. Had the defendant been acquitted, it would have been well with him and his counsel, and in the event of his conviction, this action upon the part of the judge would afford them ground for another hearing. Their silence was politic, and the opportunity thus given them for it they deemed fortunate. But we think that a practice which affords parties an opportunity to take such chances is not to be approved or encouraged. There must be some end to deliberation over jurors, and some authority to determine when the end is reached.

Discretion in regulating and conducting the business of the court is necessarily confided to the judge, and this court should never interfere with its exercise, unless it is made to appear that wrong or oppression has resulted from its abuse. Nothing of the kind is suggested in this case. It does not seem that any right has been withheld from the defendant, or that he has not had a fair trial; his motion for another hearing contains no such complaint.

3. What a disinterested by-stander, who witnesses the conflict going on between the defendant and the party assailed, may say during the heat of the engagement, is not evidence, especially when the declaration amounts to nothing more than the declarant's opinion as to the defendant's motive or purpose for engaging in and prosecuting the fight. Such a declaration from such a source, in such a

case, is no part of the *res gestæ.* The court committed no error in refusing to allow the witness, Turner, to testify that he heard a young man standing by remark that it was his impression that the defendant was not trying to hurt the prosecutor. Had the party referred to been present and sworn, he would not have been allowed, as a general rule, to testify to his impression, at least without stating the facts on which it was founded.

4. There was no other exception to the decisions of the judge or the judgment insisted on in argument or pressed upon this court. In our opinion, they were very properly abandoned.

Judgment affirmed.