### 2695. HOBBS *v.* THE STATE.

1. Where one is charged with the offense of attempting to wreck a railroad train, the question whether it was his intention to wreck the train, or merely to obstruct the tracks, and, therefore, whether he should have been indicted under section 520 of the Penal Code, rather than under section 512, is a question of fact for the jury, and may

be determined in every case by those circumstances which indicate the probable result of the defendant's act.

2. Continuances in criminal cases are not governed by the same rule as those in civil cases. In a criminal case a motion for continuance should be granted whenever the principles of justice appear to demand a postponement, whether the witness on account of whose absence the postponement is asked has been subpœnaed or not, if his testimony is material and it appears that defendant has used all the diligence within his power, and all the means at his command to procure the attendance of the absent witness. A motion for a continuance put upon the ground of absence of a witness, while to some extent addressed to the discretion of the judge, ought generally to be granted if his testimony is material, even though other witnesses present may testify to the same facts as the absent witness would state. The absent witness might be believed, while the witnesses present might be discredited by the jury.

3. When alibi is the only defense set up by a defendant in a criminal case, and this defense is sustained by testimony, the jury should be properly instructed in the rules governing the consideration of the subject of alibi, even in the absence of a request, and although the defense of alibi is included in the general plea of "not guilty." It is the duty of the court to instruct the jury, without request, in the law applicable to the substantial issues presented by the evidence.

4. There is no merit in the exception to the instructions of the trial judge upon the subject of insanity. As every person is presumed to be sane, the burden of proving insanity or idiocy rests upon the defendant, and the insanity or idiocy need not be established beyond a reasonable doubt, but only to the reasonable satisfaction of the jury, as the jury were correctly informed by the judge. When, in a given case, it appears that the defendant is insane or a lunatic or an idiot, and the burden has been shifted, it devolves upon the State to prove the sanity of the defendant.

DECIDED JULY 5, 1910.

Indictment for attempt to wreck railroad train; from Montgomery superior court—Judge Martin. April 30, 1910.

*William B. Kent,* for plaintiff in error.

*E. D. Graham, solicitor-general,* contra.

RUSSELL, J. The defendant was convicted of the offense of attempting to wreck a railroad train. The indictment was based upon the provisions of section 512 of the Penal Code, which prescribes that any one who shall wreck or attempt to wreck a railroad train, or a locomotive, or any car of the same, shall be punished by confinement in the penitentiary for life, unless the jury trying the case shall recommend the person to mercy. It is urged by counsel for plaintiff in error that the defendant, if guilty at all, violated section 520 of the Penal Code, and that under the evidence he could not properly be convicted upon the present indictment. The

reason given is that the evidence fails to show any intent to wreck the train, and that the most that appears from the evidence, construing it favorably to the prosecution, is that the defendant obstructed the railroad or the train. The question as to whether this contention is sustained was one for the jury.

Conceding that the defendant placed a scantling or old cross-tie across the track, it is for the jury to say whether it was his intention to wreck the train or merely to derail or obstruct it. In *Sanders* v. *State*, 118 *Ga.* 329 (45 S. E. 365), it was held, that "to place on the rails of a railroad track a piece of iron of sufficient size and weight to derail a passenger-car is to obstruct the track of a railroad company, within the meaning of Penal Code, § 520." Sanders, however, was indicted under section 520, and in the language of the ruling of the Supreme Court quoted there is nothing to indicate that if he had been indicted under section 512 of the Penal Code, for attempting to wreck the same train, it would have been held that there was a variance between the proof and the allegations. In other words, it could not have been held that if the surrounding circumstances were such as to satisfy the jury that the intention in placing the bar of iron across the railroad track was to wreck the train, the jury would not have been authorized to find the defendant guilty. From the testimony of the engineer in the present case, we ourselves would be very doubtful whether the intent of this boy was to wreck the train, or whether he merely wanted to see the wood placed there by him splintered. The engineer testifies that the engine readily cut the obstruction out of its way into splinters, and that though he endeavored to stop the train, he did not do so, and, after the train had passed through and over the obstruction, the engine proceeded on its way uninjured. However, the jury was authorized to find that the intent of the defendant (assuming that he placed the timber across the track) was to wreck the train; because there was testimony to the effect that such a piece of timber as he placed across the track would generally derail the train. Whether the derailment would result in a wreck is of course to be determined by such circumstances as the speed at which the engine might be running, the weight of the train, and the contour of the surroundings. For instance, if a train were derailed by running slowly and on level ground, with no objects upon the sides of the track with which it was likely to come in con-

tact, these would be circumstances from which the jury might infer that there was no intent to wreck the train, though there might be a purpose to obstruct or derail it. On the other hand, a jury could well infer that an attempt to derail a train upon a high trestle, where an inch out of balance might precipitate the engine or coaches, or both, to certain ruin upon the rocks below, was a conclusive circumstance indicating an intention to wreck the train, and not merely to obstruct it.

2. We think the judge erred in overruling the defendant's motion for a continuance. The defendant asked a continuance because of the absence of two witnesses,—J. H. Mosely, by whom he expected to show that he was an idiot, and Jake Phillips, by whom the defendant's father stated that he expected to prove not only that the defendant was an idiot, but also expected to prove an alibi. It appeared that the defendant had other witnesses present by whom he could show that he had always been considered an idiot, and it was, no doubt, for this reason that the court disregarded the showing so far as Mr. Mosely's absence was concerned; because it was proved that Mr. Mosely had been subpœnaed and was too sick to come to court. There is no doubt as to the reason which influenced the trial judge in disregarding the absence of Jake Phillips; for it appears that the court suggested to the solicitor-general that there was no necessity for further inquiry as to his absence, because it had not been made to appear that Phillips had been subpœnaed. As we pointed out in the case of *Paulk* v. *State,* 5 *Ga.* 567 (63 S. E. 659), the long-established rule that motions for continuances in criminal cases are addressed to the sound discretion of the trial judges is stated in section 961 of the Penal Code, and is especially pertinent to cases called for trial at the same term as that at which the defendant is indicted. In this section there is no requirement that it shall be made to appear that the witness has been subpœnaed. Of course, if he has not been subpœnaed, or no effort has been made to subpœna him, and there has been ample opportunity to do so, a court would be justified in disregarding the absence of a material witness. But, as we said in the *Paulk* case, if it appears that the defendant has done all that was within his power to procure the attendance of a witness, whose attendance could probably be later secured, even though he might not have subpœnaed him, this, of course, would afford no

reason for overruling a motion for a continuance. We think, therefore, that the trial judge erred in assuming that the fact that Phillips had not been subpœnaed prevented the defendant from insisting that his absence was a legal ground of continuance. As to Mr. Mosely, it appears that he had been subpœnaed, and that he was too sick to attend the court on the day of the trial. The question which arises then, as to him, is, would his testimony have been material? It is not denied that he would have testified that the defendant was an idiot, and, if so, incapable of distinguishing right from wrong. This testimony would have been material. It is urged, however, that the defendant had other witnesses by whom he could establish the same fact, and who did testify upon the trial that the defendant was an idiot. If, according to uncontradicted evidence, the testimony of a witness who is unavoidably absent is material, it is not within the power of the court to say that the defendant has sufficient testimony upon that point because he has other witnesses present who will testify to the same fact as the absent witness. The credibility of a witness being for the jury, the court can not select a party's witness for him. The jury might disregard as wholly unreliable the testimony of the witnesses who are present, and yet might pin their faith to every word uttered by the absent witness. Either his manner upon the stand, his opportunity for knowing the facts, the probability of his statement, or its very apparent sincerity, might carry conviction to the minds of the jury, while the interest or manner or bad character of other witnesses who testify to the same facts might cause the jury to eliminate their testimony from the case as wholly unworthy of credit. This principle was recognized so strongly by the Supreme Court that in *Reid* v. *State, 23 Ga.* 190, where the defendant moved for a continuance because of the absence of a witness by whom he expected to prove an alibi, and the court overruled the motion because the defendant had at hand other testimony to the same effect, it was held that the court should either have granted the motion, or exacted a promise from the State not to introduce evidence to destroy the credit of the witness who was present.

3. We think, too, that the court erred in not instructing the jury as to the rules which should govern them in their consideration of the defense of alibi. It is true there was no request to that effect, and it has been held that where the defense of alibi is

presented solely by the defendant's statement, it is not error, in the absence of a request, not to refer specifically to the subject of alibi, because, as it is the duty of the State to prove the defendant's presence, proof of his absence is included under the general defense of "not guilty." In the present case, however, it was sought to establish the alibi by the sworn testimony of the witnesses. It was the only defense in denial of the act itself presented by the defendant; because the plea of insanity is not a denial of the criminal act; it is not a denial that the defendant committed the act charged against him; it is rather an assertion that even if he did commit the act, the law grants him immunity and overlooks the act, because he is mentally incapable of crime. The only issue, therefore, as affecting the guilt or innocence of the defendant in this case, if the jury thought him to be sane (as all men are presumed to be), was whether he did or did not do the act charged in the indictment. From one view a mere statement of this fact would seem to be sufficient instruction·to the jury upon the subject of alibi; and, of course, in the absence of·a request, the trial judge  is not required to bring to the attention of the jury the various theories, arising from the evidence, which may tend to show his innocence, or at least the State's failure to prove his guilt. But it is to be borne in mind not only that there are cases in which the defendant might be guilty of a crime without being actually present, but also that where an alibi is insisted upon as a defense, this fact is to be measured by a rule different from that employed in determining the effect of testimony for the State. The State must satisfy the jury that the defendant committed the acts alleged against him, beyond a reasonable doubt. The defendant, to disprove the State's case, has only to reasonably satisfy the jury that he was absent. As pointed out in *Smith* v. *State*, 3 *Ga. App.* 803 (61 S. E. 737), this rule is·perhaps incongruous, and yet is well established by the decisions of the Supreme Court of this State. In *Fletcher* v. *State*, 85 *Ga.* 666 (11 S. E. 872), and in *Moody* v. *State*, 114 *Ga.* 449 (40 S. E. 242), it was held that when the defense of alibi·was relied upon and sustained by testimony, a failure to charge upon the law of alibi would cause a new trial. While the Supreme Court has since held that failure to charge upon alibi, in the absence of a request, where the defense was presented only in the statement of the defendant, was not er-

roneous, the rulings in the cases of *Fletcher* and *Moody* have not been overruled; the holding is merely in accord with the general rule that the court is not required to present any defense arising exclusively from the defendant's statement, without a written request. In every case it is the duty of the judge to present the controlling issues with sufficient definiteness to enable the jury to consider them legally, and as the only issue in this case really affecting the physical participation of the defendant in the alleged criminal act depended upon whether it was probable that he was at such another place at the time of the alleged offense as rendered his participation therein impossible, the jury should have been instructed in the rules controlling the consideration of the evidence by which the defendant sought to establish his alibi.

4. There was no error in the instructions of the trial judge on the subject of insanity as an excuse for crime. In so far as the requests to charge upon that subject were legal and pertinent, the subject was fully covered in the general charge. The charge of the trial judge as a whole was a luminous exposition of the general principles of law governing the case, and some portions of it were more favorable to the defendant than he had a right to ask, but in our opinion the case should have been postponed, to enable the defendant to present the testimony of the absent witnesses, and the attention of the jury should have been specifically called to his defense of alibi, and the jury should have been told, not only that the defendant was only required to establish this defense to the reasonable satisfaction of the jury, and that if they had any doubts upon that subject, the benefit of such doubts should be given the defendant, but also that the evidence tending to show an alibi was to be considered by them with a view of ascertaining whether it created a reasonable doubt of the defendant's guilt, either when considered alone or when taken in connection with all the facts in the case.	*Judgment reversed.*