30584.  HAMBY *v.* THE STATE.

818

Decided October 13, 1944.   Rehearing denied December 12, 1944.

*R. R. Burger, Orrin Roberts,* for plaintiff in error.

*D. M. Pollock, solicitor-general,* contra.

MacIntyre, J.  ■  The rulings announced in headnotes 1, 2, and 4 do not require elaboration.

■  The defendant excepted to a portion of the judge's charge wherein he gave proper instructions on the law of flight.   Counsel for the defendant insist that there was no question of flight in the case, and no testimony to show that the defendant at the time intended to resort to flight.   Able counsel are in error.   By reference to the record, it will be ascertained that the question of flight is in the case, for Whitlow, a witness for the State, testified that when the defendant got through shooting, he ran by him; and Johnson, another witness for the State, testified that "after the shooting, Mr. Hamby [the defendant] ran."   The evidence showed that the defendant ran from the scene of the shooting, which occurred on the premises of one Payne, and that he was arrested at his home about an hour later.   The fact that he was apprehended

at his home, and that he had not fled from the community in which the crime was committed, and in which he lived, is wholly immaterial, in that there can be no set or specific time necessary to constitute flight; and the distance the accused ran before he was apprehended is also immaterial. Muse *v.* State, 29 Ala. App. 271 (196 So. 148).

■ The instructions gave the defendant the benefit of two separate theories of defense. One theory which was supported by one phase of the evidence and the defendant's statement is that of justifiable homicide, and is based on the Code, §§ 26-1011, 26-1012. These two sections are applicable when the homicide is committed in good faith to prevent the perpetration of a felonious assault upon the person killing, such as is mentioned in § 26-1011, or under the fears of a reasonable man that such an offense would be perpetrated, unless the person who is actually or apparently about to commit it be slain; and, under the theory of these two code sections, the slayer's justification could be complete without showing that, in order to save his own life, the killing of the other was absolutely necessary. § 26-1012. This theory was fully and fairly charged by the judge. The other theory of justifiable homicide, which is supported by another phase of the evidence and the defendant's statement, is based on another kind of justifiable homicide such as is embodied in section 26-1014 of the Code. But this last-named section is applicable only in cases of mutual combat, and does not qualify or limit the law of justifiable homicide laid down in sections 26-1011 and 26-1012.

The court charged the jury that, "If you find from all the facts and circumstances of the case that there was a mutual intention to fight—that there was a mutual combat—then, in order for the defendant to claim self-defense, it must appear that the danger was so urgent and pressing at the time of the killing, [that] the killing of the deceased was absolutely necessary, and it must appear, if the person killed was the assailant, that the defendant endeavored to decline any further struggle before the mortal blow was given." To this instruction the defendant excepted on the ground that "this charge was not applicable to the evidence in this case, and ignored the defense in the case under the law of reasonable fears, and was error, and harmful and prejudicial to the defendant's case." This charge is based on section 26-1014 of the Code, which

is as follows: "If a person shall kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle. before the mortal blow was given." Thus under the theory of this kind of justification, which is embodied in section 26-1014 of the Code, the defense is not complete without showing that the killing was absolutely necessary in order to save the slayer's own life. From an examination of the entire charge it appears that the instructions as to these two separate branches of the law of justifiable homicide, which were authorized by the evidence, were not given so as to confuse the one with the other, or make them all applicable to the same theory or state of facts. Hence there was no such confusion of the two theories as was calculated to injure the defendant. *Cooper* v. *State,* 70 *Ga. App.* 691 (29 S. E. 2d, 430); *Warrick* v. *State,* 125 *Ga.* 133, 141 (supra).

■ The defendant contends that the verdict should have been for murder or an acquittal, and that the evidence did not authorize a verdict of voluntary manslaughter. "The law of voluntary manslaughter may properly be given in charge to the jury on the trial of one indicted for murder, where, from the evidence or from the defendant's statement at the trial, there is anything deducible which would tend to show that he was guilty of voluntary manslaughter, or which would be sufficient to raise a doubt as to which of these grades of homicide was committed." *Green* v. *State,* 52 *Ga. App.* 290, 297 (183 S. E. 204). Bearing in mind the rule that, "in determining whether the homicide was murder or manslaughter, it is the prerogative of the jury to believe certain parts only of the defendant's statement and to combine those parts with certain parts only of the evidence," we think that the verdict of voluntary manslaughter was authorized under the evidence and the defendant's statement, when certain parts of the evidence were combined with certain parts of the defendant's statement, and that the judge did not err in overruling the motion for a new trial. *Gresham* v. *State,* 70 *Ga. App.* 80, 83 (27 S. E. 2d, 463).

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*