## 71655. McCULLOUGH v. THE STATE.
(341 SE2d 241)

BANKE, Chief Judge.

The defendant was convicted of possessing marijuana in violation of the Georgia Controlled Substances Act. On appeal, he contends that the trial court erred in denying his motion to suppress the marijuana in question, which was seized during the course of a warrantless search of his rectal cavity and alimentary canal, conducted while he was an inmate at the Douglas County Jail.

The defendant had been sentenced to serve 52 weekends at the jail following a conviction for driving under the influence. As he was checking into the jail at midnight on a Friday to begin one of his weekend terms, he was subjected to a strip search, based on informa-

tion received from a confidential informant to the effect that he had been smuggling drugs into the jail. When the strip search failed to result in the discovery of any contraband, the defendant was transported to the Douglas County Hospital to be X-rayed. Based on the X-ray, which evidently revealed the existence of a mysterious bulge in his rectum, the decision was made to perform a rectal examination on him.

According to the chief jailer, who had accompanied the defendant to the hospital, the defendant was given the option of having the examination conducted at the hospital but refused. At some point during the visit to the hospital, an attorney was summoned for the defendant at his request. This attorney informed the jail personnel that they should "get whatever kind of court order they deemed appropriate" because the defendant was not going to consent to the examination. It appears that one of the jail officials subsequently telephoned a judge for advice and was told "to proceed in what we were doing or attempting to . . . [w]ithout a warrant."

After the defendant had been transported back to the jail, he was forcibly subjected to a rectal examination, performed by a physician employed as the jail's medical officer. This physician testified that the defendant actively resisted the examination but that "with the help of several of the officers in the jail he was subdued and put in the normal position that I normally examine, do a rectal examination on patients." During the course of the examination, a balloon containing marijuana was removed from the defendant's rectum. Subsequently, for reasons which are not apparent from the record, the physician and other jail personnel repeatedly administered purging enemas and oral medications to the defendant to force him to vomit and defecate. Throughout this latter phase of the search, which apparently lasted for at least two hours, until the next shift change at 5:00 a.m., the defendant was required to remain naked and, on occasion, to eliminate on the floor. It does not appear that any additional contraband was discovered as a result of this procedure; nor, as previously indicated, does it appear why the discovery of any additional contraband might reasonably have been anticipated. The trial court overruled the defendant's motion to suppress based on a determination that "[a]ny search of any person in penal confinement is permissible." *Held*:

1. While it is true that, due to the decreased expectations of privacy and the exigencies inherent in the prison environment, prison inmates may normally be searched without a warrant, such searches must be conducted in a reasonable manner to comply with the Fourth Amendment. See *Bell v. Wolfish*, 441 U. S. 520, 560 (99 SC 1861, 60 LE2d 447) (1979); *United States v. Lilly*, 576 F2d 1240 (5th Cir. 1978). See also *Hudson v. Palmer*, 468 U. S. ___ (104 SC 3194, 82 LE2d 393) (1984).

It was held in *United States v. Lilly*, supra, that, in order to justify a body-cavity search of a prison inmate, "the government always must show that a legitimate penological need necessitated the search, that the need could not have been satisfied by a more narrow means, (cit.), and that the search and any consequent seizure were conducted in a reasonable manner." Id. at 1246. In that case, the Fifth Circuit Court of Appeals examined the legality of body-cavity searches performed on two separate inmates upon their return to the prison following lawful, voluntary absences. One of the searches was held to be unreasonable because the inmate in question had been selected on a completely random basis and because the prison inmates in general had been given no notice that voluntary absences from the institution might result in their being subjected to such intrusive searches. The other search was held to be justified on the basis of specific information received by prison officials to the effect that the inmate in question was concealing contraband in a body cavity. It was specifically noted by the court, however, that one of the factors contributing to the reasonableness of this search was that the inmate had been permitted to remove the contraband herself, following its discovery upon visual examination of her body cavities.

In the case before us, there is no question that the information the jail officials had received from the confidential informant and from the subsequent X-ray examination of the defendant provided them with a reasonable basis for believing he was attempting to smuggle contraband into the institution by concealing it in his rectum. However, the manner in which the search was conducted was so flagrantly and unremittingly offensive as to compel the conclusion that it violated his Fourth Amendment right to be free from "unreasonable searches and seizures." In the first place, the state made no clear showing that the defendant was afforded an opportunity to remove the contraband himself. Compare *United States v. Lilly*, supra. See also *Maine v. Nason*, 433 A2d 424, 428 (Me. 1981). Secondly, no explanation whatever was offered for the ordeal the defendant was forced to endure subsequent to the initial rectal examination. Indeed, the employment of such extreme search techniques on any person for any reason would appear to be without precedent in the annals of contemporary American jurisprudence. Compare *United States v. Montoya*, 473 U. S. ___ (105 SC 3304, 87 LE2d 381) (1985) (where the United States Supreme Court approved the seizure of narcotics discovered through examination of the defendant's natural bowel movements, following an initial rectal search performed on her in a hospital pursuant to a warrant). Because of the state's failure to establish any legitimate penological necessity for the degree of the intrusion employed in conducting the search, we hold that the trial court erred in denying the defendant's motion to suppress.

2. The remaining enumerations of error are rendered moot by the foregoing.

*Judgment reversed. Birdsong, P. J., concurs. Sognier, J., concurs in the judgment only.*

DECIDED JANUARY 28, 1986 —
REHEARING DENIED FEBRUARY 10, 1986 —

*Mary Brock Kerr, W. Bennett Gaff,* for appellant.
*Frank C. Winn, District Attorney, Richard S. Thompson, Assistant District Attorney,* for appellee.