A94A2395, A94A2718. SCOTT v. THE STATE (two cases).

(455 SE2d 609)

McMURRAY, Presiding Judge.

Defendant Frances Scott was charged with a single count of forgery in the first degree. While incarcerated pending trial, she was also indicted for possession of cocaine. She was tried before a jury and was found guilty of forgery in the first degree. After a bench trial, she was found guilty of possession of cocaine. In Case No. A94A2395, defendant appeals from the judgment of conviction entered by the trial court on the jury's verdict finding her guilty of forgery in the first degree and in Case No. A94A2718, she appeals from the judgment of conviction for possession of cocaine. At the request of defendant, the two cases have been consolidated on appeal. *Held*:

*Case No. A94A2395*

1. In her first enumeration, defendant contends the evidence is insufficient to authorize her conviction for forgery in the first degree. She argues that "inconsistencies in the testimony of the state's witnesses who claimed [defendant] was the forger . . ." mandate that the weight of their testimony is insufficient as a matter of law.

At defendant's jury trial, Michael Anthony Durden identified State's Exhibit 1 as a check drawn on his former account at the "Bottlers Credit Union." This particular stolen check is dated January 30, 1993, is made out to Food Max in the amount of $125.54, and the name of the maker is signed as "Michael Michelle Durden." Mr. Durden had closed this checking account in October 1992, and kept the unused checks "[i]n my drawer at my niece's house." He never gave anyone permission to use those checks, and "[r]eported them stolen in January of [1993 . . . after receiving] mail saying I owed so many people. . . ." Emily Hemmick was a cashier "employed by Food Max on Highway 138, Stockbridge, Georgia, back in January of 1993[.]" At around 2:00 p.m. on January 30, 1993, Ms. Hemmick saw defendant "write out the amount and sign . . ." the check that is State's Exhibit 1 and then tender it to pay for groceries. Defendant left the store. Ten or fifteen minutes later, the manager asked Ms. Hemmick to step outside. There, Ms. Hemmick identified defendant as the "same person that the police had in custody. . . ." Defendant had attempted to alter her appearance, in that "[s]he had pulled her hair back and slipped on . . . a sweatshirt." However, Ms. Hemmick recognized an unusual blue ring worn by defendant. John Lively, the store manager, recognized the name printed on the check defendant tried to use to pay for her order as the "same as one we had been returned by the bank and we verified that the account had been closed." He asked defendant to discuss the check, but "she walked out the door [. . . and] disappeared out of sight."

On appeal from a criminal conviction the evidence must be viewed in the light most favorable to the verdict. *Johnson v. State*, 211 Ga. App. 151, 152 (438 SE2d 657). " 'The jury determines the credibility of the witnesses and weight to be given their testimony. . . . [In the case sub judice,] the evidence and all reasonable deductions are such as to enable a rational trier of fact to find the elements of the offense [of forgery in the first degree as charged] beyond a reasonable doubt, according to the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).' . . . *Frost v. State*, 204 Ga. App. 581, 582 (420 SE2d 81) (1992)." *Mitchell v. State*, 208 Ga. App. 473, 474 (430 SE2d 852).

2. Over defendant's character objection, the trial court admitted into evidence two bench warrants issued for defendant's "failure to appear" in this case. The trial court determined that these warrants were relevant evidence of flight as consciousness of guilt. This evidentiary ruling is defendant's second enumeration. She argues that the rule permitting evidence of flight as an indicium of guilty knowledge "refers to the actual crime, not to a failure to appear in court at some later date." We disagree.

"[T]here can be no set or specific time necessary to constitute flight[.]" *Hamby v. State*, 71 Ga. App. 817, 818 (2), 819 (32 SE2d 546). "[I]t is not necessary that the flight take place immediately. Code § 38-302 [now OCGA § 24-3-2][.]" *McKuhen v. State*, 216 Ga. 172 (3) (115 SE2d 330). "Further, evidence that the defendant forfeited his appearance bond is admissible as tending to show flight. *Jones v. State*, 26 Ga. App. 635 (3) (107 SE 166); *Strickland v. State*, 137 Ga. App. 628 (1) (224 SE2d 809)." *Johnson v. State*, 148 Ga. App. 702 (1), 703 (252 SE2d 205).

3. In her third enumeration, defendant contends the trial court erred in granting the State's request for a continuance of the presentencing hearing due to the absence of a State's witness. She argues that the State "failed to make the statutory showing required by OCGA § 17-8-25 to establish a valid reason for a continuance." This contention is without merit.

The provisions of OCGA § 17-10-2 (a) expressly authorize the trial court to "recess the trial for the purpose of taking the sentence to be imposed under advisement." The provisions of OCGA § 17-8-25, relating to a continuance of the trial, are not applicable to the scheduling of the post-verdict non-jury sentencing hearing.[1] Rather,

---

[1] The special concurrence mistakenly cites *Hayes v. State*, 214 Ga. App. 893 (449 SE2d 360) as authority for the dubious proposition that the eight-point showing of OCGA § 17-8-25 must be made by the State in an application for a continuance of the post-verdict non-jury presentencing hearing. Nevertheless, the panel members are in agreement that the grant of such a continuance at the behest of the State is a matter entrusted to the sound discretion

the scheduling of this hearing rests within the sound discretion of the trial court. " 'Discretion in regulating and controlling the business of the court is necessarily confided to the judge. . . .' *Carr v. State*, 76 Ga. 592 (2c); Code Ann. § 24-104 [now OCGA § 15-1-3]." *Simpkins v. State*, 149 Ga. App. 763, 768 (4), 769 (256 SE2d 63). In the case sub judice, the trial court recessed the sentencing hearing for two weeks because a fingerprint expert from the Georgia Bureau of Investigation was not present. This witness would testify ultimately that defendant was the same person previously convicted under a variety of aliases. We find no abuse of discretion in the refusal of the trial court to conduct the sentencing hearing immediately and without the assistance of this expert witness.

4. Lastly, defendant contends she was improperly sentenced as a recidivist because the trial court considered her "First Offender drug record. . . ." In this regard, the transcript of the sentencing hearing shows that the trial court admitted over defendant's objection a certified copy of her 1980 guilty plea (under the name of Barbara Ann Jackson) to a two-count special presentment alleging joint possession of cocaine and marijuana with Douglas Adam Scott. The State argued below that such first offender evidence was admissible "in aggravation of punishment, whether . . . they've successfully completed it or not." Also admitted, without objection, was a certified copy of her 1987 guilty plea to five felony counts of "FINANCIAL TRANSACTION CARD THEFT" and one misdemeanor count of giving a false name to a law enforcement officer. In the case sub judice, defendant was sentenced to "a full term of Ten (10) . . . (years)[.]"

"Evidence in aggravation is not limited to convictions, *Devier v. State*, 253 Ga. 604 (9) (323 SE2d 150) (1984), and reliable information tending to show a defendant's general bad character is admissible in aggravation. *Fair v. State*, 245 Ga. 868, 873 (268 SE2d 316) (1980)." *Williams v. State*, 258 Ga. 281, 286 (7), 287 (368 SE2d 742). Nevertheless, "[a] prior first offender record may not be used to sentence a defendant as a recidivist for a later crime if the conditions of probation under the prior first offender treatment have been fulfilled and the defendant has been 'discharged' under OCGA § 42-8-62. *Queen v. State*, 182 Ga. App. 794, 796 (1) (357 SE2d 150)." *Jones v. State of Ga.*, 212 Ga. App. 682, 683 (1), 684 (442 SE2d 880). If the State seeks sentencing under OCGA § 17-10-7 (a) for a second felony offense, the maximum sentence must be imposed. *State v. Temple*, 189 Ga. App. 284, 285 (1) (375 SE2d 300); *Hammond v. State*, 139 Ga. App. 820, 823 (3) (229 SE2d 685). It follows that evidence which is inadmissible to show that the defendant is a recidivist is superfluous when ten-

of the trial court.

dered as evidence in "aggravation" of a mandatory recidivist sentence. In the case sub judice, the trial court erred in admitting this prior guilty plea which had been resolved by placing defendant on probation as a first offender pursuant to the provisions of OCGA § 42-8-60 because the "prior prosecution 'is not allowable by law' as provided by OCGA § 42-8-65." *Queen v. State*, 182 Ga. App. 794 (1), 795, supra. However, we find the error to be harmless in this instance. Treating the 1987 guilty plea to five felony counts of financial transaction card theft as a single conviction under OCGA § 17-10-7 (c), the record still supports the maximum sentence for forgery in the first degree imposed in compliance with OCGA § 17-10-7 (a).

## Case No. A94A2718

5. In two related enumerations, defendant contends the trial court erred in failing to suppress a small scrap of plastic allegedly containing cocaine. This plastic was secreted in defendant's vagina while she was a pretrial detainee at the Clayton County Jail.

The following material facts were adduced at defendant's motion to suppress hearing: On February 28, 1993, Diane Montgomery, then a Lieutenant with the Clayton County Sheriff's Department ordered a shakedown search based on "received information that . . . drugs [were] located in . . . Section 5 of C Pod," at the Clayton County Jail in Lovejoy, Georgia. "Every female in that section got strip searched," by female deputies in a private room with no windows and with the door closed. Visual body-cavity searches were conducted but the deputies "never touched the inmates[.]" When Deputy Charlotte Nelson "asked [defendant] to bend over [defendant] informed [Deputy Nelson] that she had a tampon inserted. . . ." Deputy Nelson asked defendant "to remove it [. . . according to] standard procedure." Defendant "said she was trying but it was too tight to pull out." To Deputy Nelson it appeared "as if [defendant] wasn't really trying to take it out." Defendant was allowed to get dressed and was taken to another area where she remained detained. Meanwhile, cocaine had been found in C Pod where defendant was housed, "behind the television . . ." and also concealed on the person of another inmate. Lieutenant Montgomery instructed that defendant be "taken to the infirmary for [a second strip search]." When informed that a second strip search would be done and that it was necessary for her to remove the tampon, defendant became reluctant and did not want to cooperate. She was detained at the infirmary, dressed but "not restrained[,] for a number of hours." Lieutenant Montgomery decided to seek a warrant for a body-cavity search of defendant. Around 5:30 a.m. on March 1, 1993, defendant was placed, still dressed in jail attire, in a restraining chair, i.e., her ankles and wrists were cuffed. Lieutenant Montgomery

explained "the only reason we put her in there is because I had no spare deputies to sit right there with her because it takes all we have in order to serve breakfast." At 7:00 a.m., March 1, 1993, Lieutenant Montgomery applied for and obtained a warrant to conduct a search of defendant's person.

Around 9:30 a.m., Deputy Jennie L. Massengale transported defendant to the Southern Regional Hospital. There, after further delay, the physician on duty spoke with defendant and then informed Deputy Massengale that "he would not do the . . . exam on [defendant] without her consent unless [Deputy Massengale] specifically told him that he had to do the search." Defendant resisted because the search warrant did not specify "a cavity search." At that point, Deputy Massengale explained to defendant: "[E]ither you can take the bag out yourself or we're just gonna go back to the Jail. [There, you] may have to stay in the infirmary because if there's some foreign object in there[, then] for security reasons or medical reasons, they may have to watch you, I don't know. Actually, I'm tired of messing with you, you know, we've been here for several hours, you can either take it out or you don't, but we're leaving." At that point, defendant, now clad in a hospital gown, produced from under a sheet across her lap what "appeared to be a green or black colored piece of torn plastic. . . ." According to defendant, "I told [Deputy Massengale] that I didn't think I had to do it and so I wasn't gonna do it. . . . I sat there for a while and she informed me that I had to do, that I had to have that cavity search, because the search warrant was issued and so I just gave her the plastic paper to end all this." The plastic was sent to the State Crime Laboratory where the "RESIDUE [TESTED] POSITIVE FOR COCAINE, SCHEDULE II."

Defendant moved to suppress the plastic because "the means employed to search and seize were unreasonable." This enumeration is controlled adversely to her contention by the decision of the Supreme Court of the United States in *Bell v. Wolfish*, 441 U. S. 520 (99 SC 1861, 60 LE2d 447). Without underestimating the degree to which strip searches and body-cavity inspections invade personal privacy, that Court nevertheless held that "visual body-cavity inspections [of pretrial detainees] can . . . be conducted on less than probable cause [so long as the searches are conducted in a reasonable manner]." *Bell v. Wolfish*, 441 U. S. 520, 560 (III, D), supra. In the case sub judice, there is no evidence of violence, abuse, torture or threats. The actions of jail officials in obtaining a warrant and ultimately allowing defendant herself to produce the suspected contraband were entirely reasonable. Compare *McCullough v. State*, 177 Ga. App. 741, 742 (1) (341 SE2d 241). "Nor can it be said, in the absence of coercion, that such evidence was inadmissible as violative of the due process clause of the 14th Amendment of the Constitution of the United States. [Compare]

*Rochin v. California*, 342 U. S. 165 (72 [SC] 205, 96 [LE] 183), and citations." *Jones v. State*, 90 Ga. App. 761, 762 (1) (84 SE2d 124).

6. Defendant's additional contention is that the evidence should have been excluded because she was "compelled against her will . . ." to remove the piece of plastic containing cocaine residue. She argues that evidence she gave incriminating herself should have been excluded by operation of OCGA § 24-9-20 and Article I, Section I, Paragraph XVI of the 1983 Georgia Constitution.

"It has long been held that evidence taken from an accused is admissible in Georgia where not compelled by illegal arrest. Compare *Evans v. State*, 106 Ga. 519 (32 SE 659), where the evidence was not admissible where compelled during an illegal arrest; [cit.]. . . ." *Creamer v. State*, 229 Ga. 511, 517 (192 SE2d 350). In the case sub judice, there is no contention that defendant's detention was not lawful. The fact that she herself produced the evidence in acquiescence to the search warrant for her person does not render that evidence inadmissible. Rather, "her action . . . was voluntary and not the result of coercion so as to make the introduction . . . in evidence inadmissible on the ground that it violated the [Georgia] constitutional inhibition against self-incrimination, as there was no explicit threat or show of force against the defendant. *Grant v. State*, 88 Ga. App. 745 (77 SE2d 748) [(physical precedent)], and citations." *Jones v. State*, 90 Ga. App. 761, 762 (1), supra. This enumeration is without merit.

7. Defendant challenges the sufficiency of the evidence to authorize her conviction for possession of cocaine.

" 'Regardless of the amount, however minute, if it is enough for the officers to recover, as small as it may be, and capable of being identified by expert chemical analysis, such testimony would be sufficient when considered with other evidence as to possession.' " *Rogers v. State*, 155 Ga. App. 685, 687 (4) (272 SE2d 549). In the case sub judice, given the exclusive nature of defendant's possession, a rational trier of fact could reasonably have found her guilty, beyond a reasonable doubt, of possession of cocaine as alleged in the indictment. See *Green v. State*, 260 Ga. 625 (1) (398 SE2d 360).

8. The trial court sentenced defendant to "a full term of Thirty (30) . . . years," pursuant to "OCGA § 17-10-7 (b)." Defendant contends this sentence actually is imposed under OCGA § 16-13-30 (e) and is not authorized, arguing that her prior drug charges should not be considered. However, there was evidence of two prior episodes of felony-grade financial transaction card theft as well as defendant's most recent felony conviction for forgery in the first degree. Even excluding the prior felony drug possession charges on the ground that they were treated as a first offense within the purview of OCGA § 42-8-60 (a), nevertheless, "there are . . . three [separate] prior felonies which cannot be considered to have been 'consolidated for trial' under

OCGA § 17-10-7 (c)." *Smith v. State*, 193 Ga. App. 208, 211 (6) (387 SE2d 419). Thus, any error in considering defendant's prior drug possession offenses did not infect the maximum sentence without parole imposed under OCGA § 17-10-7 (b).

9. Defendant's remaining two enumerations have been considered and are found to be without merit. Any error committed by the trial court in admitting a certified copy of a third conviction for financial transaction card theft in the name Letitia Rae Jackson, over defendant's objection that this document had not been authenticated by Willie G. Smith, Manager of the "Automated Fingerprint Identification Section" of the Georgia Bureau of Investigation, is rendered moot by our holding in Division 8, affirming the sentence.

*Judgments affirmed. Pope, P. J., and Smith, J., concur specially.*

SMITH, Judge, concurring specially.

While I concur in the result, I write to clarify the state of the law with regard to Division 3 of the majority opinion. This court previously has applied OCGA § 17-8-25 and its companion sections governing continuances to judicial proceedings other than trials. See, e.g., *Hayes v. State*, 214 Ga. App. 893, 894 (449 SE2d 360) (1994) (OCGA § 17-8-22, sentencing hearing); *Riggins v. State*, 206 Ga. App. 239, 241 (2) (424 SE2d 879) (1992) (OCGA § 17-8-25, probation revocation hearing).

Nevertheless, the trial court did not abuse its discretion in granting a continuance. " 'It was pointed out in *Hobbs v. State*, 8 Ga. App. 53, 54 (68 SE 515) that continuances in criminal cases are not governed by the strict rules of civil cases and that the motion should be granted "whenever the principles of justice appear to demand a postponement." . . . [Cits.]' " *Gallimore v. State*, 166 Ga. App. 601 (305 SE2d 164) (1983). We have previously held that the absence of a material witness for the state is a reasonable showing in support of a continuance within the meaning of OCGA § 17-8-21, and that the trial court did not abuse its discretion in granting the state's motion. *Minicucci v. State*, 214 Ga. App. 468, 469 (2) (448 SE2d 34) (1994). I therefore concur in the result in Division 3 of the majority opinion.

I am authorized to state that Presiding Judge Pope joins in this special concurrence.

DECIDED MARCH 16, 1995.

*James B. Sullivan*, for appellant.
*Robert E. Keller, District Attorney, Mary D. Hanks, Assistant District Attorney*, for appellee.