**Everett CAMERON, Plaintiff,**

v.

**Robert HENDRICKS, et al., Defendants.**

**No. 93–3365–SAC.**

United States District Court,
D. Kansas.

Sept. 27, 1996.

Everett Cameron, Leavenworth, KS, pro se.

John J. Knoll, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The plaintiff, Everett Cameron, proceeds pro se in prosecuting this civil rights action pursuant to 42 U.S.C. § 1983. At all relevant times, Cameron was an inmate confined at El Dorado Correctional Facility, El Dorado, Kansas. The case arises from a incident in which the defendants suspected the plaintiff and three other inmates of concealing contraband. The defendants transported the plaintiff to a local hospital for x-rays which revealed that the plaintiff had concealed in his rectum what appeared to be a handcuff key. The defendants then took the plaintiff to the emergency room to have a physician remove it. The defendants gave the plaintiff a chance to remove the key without medical intervention, but he failed to retrieve it. The physician then tried to remove the key with surgical instruments. When these efforts also failed, the physician ordered an enema. In front of officers and staff, the plaintiff used a clean commode for his bowel movement. The subsequent search revealed a small piece of plastic containing a handcuff key. The x-rays of the other three inmates were negative for contraband.

### COMPLAINT

The plaintiff pleads two counts of Fourth Amendment violations. Count one specifically claims that the plaintiff's right to be free from unreasonable searches was violated when he was strip searched, dressed in an orange jumpsuit, and taken to the local hospital for x-rays. Over the plaintiff's objection, x-rays were taken of his stomach and pelvic regions. The plaintiff disputes that the defendants had cause for taking x-rays over his objection. The plaintiff also alleges that the manner in which defendants administered the x-rays violated his constitutional rights.

Count two specifically claims that the defendants ordered the removal of the key by "surgical procedure" even though the plaintiff had offered to retrieve the key himself. Count two further alleges Fourth Amendment violations in the physician twice trying to remove the key by probing the plaintiff's rectal cavity while nurses and officers looked on. The plaintiff was then stripped and dressed in a hospital gown. The plaintiff also complains that he was given an enema and was required to have his bowel movement while in the presence of officers and hospital staff members. The plaintiff claims this treatment was "very humiliating."

### PROCEDURAL HISTORY

The defendants answered and attached a *Martinez* report. (Dk. 8). The defendants also sought a protective order from discovery pending a decision on their asserted defense of qualified immunity. (Dk. 13). The court granted the protective order. (Dk. 17). The court also notified the parties that it would treat the defendants' answer and report as a motion for summary judgment and gave the plaintiff a deadline for filing his response in opposition. (Dk. 17). The plaintiff timely filed his response, (Dk. 18), to which the defendants filed a reply, (Dk. 19). Without leave of the court, the plaintiff responded to the defendants' reply. (Dk. 20). The case was transferred to this court in June of 1996. (Dk. 23).

### SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

## ANALYSIS

■ Though inmates have no legitimate expectation of privacy in their cells, they do retain a privacy interest in the integrity of their own persons. *Dunn v. White,* 880 F.2d 1188, 1191 (10th Cir.1989), *cert. denied,* 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990). The traditional Fourth Amendment prohibition against unreasonable searches extends to personal body searches of inmates. *Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). Each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell,* 441 U.S. at 559, 99 S.Ct. at 1884. Courts are to evaluate "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* Because a penal institution "is a unique place fraught with

serious security dangers" where the "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence," visual body-cavity searches may be conducted without probable cause. *See Bell,* 441 U.S. at 559–60, 99 S.Ct. at 1884–85; *Williams v. Meese,* No. 87–3242–R, 1990 WL 81292, at 3 (D.Kan. May 1, 1990). Since personal body searches of inmates are not unconstitutional as a matter of law, the issue is whether the search was unreasonable under all the relevant circumstances.

■ Captain Robert Hendricks avers that at the El Dorado Correctional Facility an inmate had constructed a "zip gun" and had fired it upon an officer. Sometime after this incident, he received information that an inmate or inmates had smuggled ammunition and contraband into the facility. According to Captain Hendricks, it was determined after an investigation that four inmates, including the plaintiff Cameron, might be concealing contraband. Acting on this information, officers transported the four inmates to a local hospital where the inmates were x-rayed. The x-rays showed that Cameron had a handcuff key concealed in his rectum. The plaintiff submits no proper Rule 56 evidence to controvert any of Hendricks' affidavit.

■ The court finds nothing constitutionally suspect about strip searching an inmate suspected of having contraband, transporting him to a local hospital, and taking x-rays to determine if the inmate has contraband in his body cavities. In *Bell,* the need to keep contraband out of penal institutions outweighed an inmate's privacy interest, and the same state interest justifies the searches here. "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell v. Procunier,* 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). The "state interest is particularly strong when the contraband at issue is ammunition, which in the hands of prison inmates poses a substantial threat to the safety of other inmates and prison staff." *Larkins v. Bartlett,* No. 88–8169, 1990 WL 1488, at *2 (S.D.N.Y. Jan. 8, 1990). Moreover, "on is-

sues of 'internal order and discipline' or 'institutional security,' courts should accord 'wide-ranging deference' to prison officials, unless there is 'substantial evidence in the record to indicate the officials have exaggerated their response.'" *Dunn,* 880 F.2d at 1191 (quoting *Bell,* 441 U.S. at 547–48, 99 S.Ct. at 1878–79). The court finds no factual or legal basis on which the plaintiff could prevail on count one of his complaint.

■ As for count two, the plaintiff alleges that he offered to retrieve the key concealed in his rectum but that the officers refused and insisted on a rectal probe search. The plaintiff further complains that the probe search was performed in the presence of two officers, a nurse and the doctor with the door to the room left open. Finally, the plaintiff complains of the humiliation in being stripped, dressed in a hospital gown, given an enema, and required to have his bowel movement all while in the presence of officers and hospital staff.

In *Levoy v. Mills,* 788 F.2d 1437, 1439 (10th Cir.1986), the court did not formulate a particular standard of suspicion to warrant an anal body cavity search, but it did hold that "the government must demonstrate a legitimate need to conduct such a search and less intrusive measures would not satisfy that need. *United States v. Lilly,* 576 F.2d 1240, 1246 (5th Cir.1978)." The plaintiff does not dispute that the defendants had reasonable justification to conduct the search, since the x-rays showed the contraband concealed in his rectum. Relying on the "less intrusive" element in *Levoy,* the plaintiff argues instead that the anal probe search was unreasonable as he "offered to return the contraband willingly" making the search unnecessary. The court is convinced that as a matter of law the plaintiff cannot prevail on the law and facts as asserted.

■ First, the "less intrusive" language in *Levoy* can no longer be applied so that only the "least intrusive" search practicable is constitutionally reasonable. The Supreme Court recently said that it has "repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment." *Vernonia School Dist. 47J v. Acton,* —— U.S.

——, ——, 115 S.Ct. 2386, 2396, 132 L.Ed.2d 564, 581 (1995) (quoting *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 629 n. 9, 109 S.Ct. 1402, 1419 n. 9, 103 L.Ed.2d 639 (1989)). " 'The logic of such elaborate less-restrictive-alternative arguments could raise insuperable barriers to the exercise of virtually all search-and-seizure powers,' (citation omitted), because judges engaged in post hoc evaluations of government conduct 'can almost always imagine some alternative means by which the objectives of the [Government] might have been accomplished.'" *Skinner,* 489 U.S. at 629 n. 9, 109 S.Ct. at 1419 n. 9 (citations omitted). Put another way, "[l]ess-restrictive alternative arguments are too powerful: a prison always can do something, at some cost, to make prisons more habitable, but if courts assess and compare these costs and benefits then judges rather than wardens are the real prison administrators." *Johnson v. Phelan,* 69 F.3d 144, 145 (7th Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3823 (U.S. May 28, 1996) (No. 95–1951). Consequently, the court considers the availability of practical less-intrusive measures to be neither controlling nor determinative but only one factor in the determination whether the search was reasonable under all the circumstances. "Thus, the mere fact that the government could have performed this search in a less invasive manner without sacrificing its legitimate penological interests does not render the search unreasonable." *United States v. Oakley,* 731 F.Supp. 1363, 1369 (S.D.Ind.1990).

Second, the *Martinez* report shows that the officers gave the plaintiff two opportunities to voluntarily produce the concealed contraband, but the plaintiff failed both times. The plaintiff's mere allegations to the contrary do not create a genuine issue of material fact. Moreover, considering that the physician could not obtain the key either by digital probe or with an instrument, the court fails to appreciate any significance to the plaintiff's allegation that he was not given a chance to retrieve the key himself. Consequently, no reasonable factfinder could conclude that the search was unreasonable just because the defendants could have waited for the plaintiff to pass the key.

There is no factual basis for holding the defendants liable for the actual manner in which the physician performed or administered the digital probe search of the plaintiff's rectum. The same holds true for the hospital staff's decision to strip the plaintiff and dress him in a hospital gown and to give him an enema. The plaintiff does not allege any facts showing the defendants' participation in any of these acts.

The court likewise finds no legal basis for finding a Fourth Amendment violation on the fact that the guards and nurses were present during the rectal examination, administration of the enema, and the subsequent bowel movement.[1] The plaintiff does not allege the presence of members of the opposite sex during any of these events. The presence of the officers, doctor and nurses was plainly warranted by concerns not only for security but also for the health of the defendant. There is no evidence or allegation that any of the procedures or actions were calculated to harass the plaintiff and were unrelated to prison or medical needs. The record also fails to show that the search was performed brutally, wantonly, or with the intent of causing pain. Undoubtedly, such searches and procedures are demeaning, humiliating and embarrassing, but it remains beyond question here that the search was reasonable under all the circumstances. The defendants are entitled to summary judgment.

IT IS THEREFORE ORDERED the defendants' motion for summary judgment is granted.

---

[1] The instant case bears little resemblance to *McCullough v. State*, 177 Ga.App. 741, 341 S.E.2d 241 (1986). In *McCullough,* the physician removed the contraband during the rectal exam, and for no apparent reason in the record the plaintiff was repeatedly given "purging enemas and oral medications ... to force him to vomit and defecate" on the floor while standing naked. 341 S.E.2d at 242.